# Wytheville.

SOUTHERN RAILWAY COMPANY v. INDIA V. JOHNSON, ADMINISTRATRIX, C. T. A., OF WILLIAM TILDEN JOHNSON.

June 14, 1928.

(Amended January 9, 1929.)

The opinion states the case.

*Thos. B. Gay, William Leigh Williams* and *Jas. H. Corbitt*, for the plaintiff in error.

*William M. Crumpler, M. Anderson Maxey* and *M. Erskine Watkins*, for the defendant in error.

CHICHESTER, J., delivered the opinion of the court.

On the 8th day of February, 1927, India V. Johnson, administratrix c. t. a. of William Tilden Johnson, brought action in the Circuit Court of Nansemond county against the Southern Railway Company for damages for the death of her husband, William Tilden Johnson, who was killed on December 22, 1924, at Wilroy, where the State highway, running from the city of Suffolk to the city of Norfolk, intersects with the tracks of the Southern Railway Company, when the automobile in which Johnson was driving collided with the defendant company's train. Upon the trial of the case the verdict of the jury was for the plaintiff in the sum of $8,000. The court declined to set the verdict aside upon motion of the defendant company and entered judgment on the verdict.

Stating them practically from the viewpoint of a demurrer to the evidence, because of the verdict of the jury finding for the plaintiff, the following is a fair statement of the facts:

Johnson was traveling alone in a closed Star automobile along the highway from the city of Suffolk to the city of Norfolk, approximately between seven and eight o'clock p. m., on the evening of December 22, 1924; it then being dark. The crossing at Wilroy is guarded by a flagman or watchman at the point of crossing. The east line of the highway and the south line of the right of way of the railway company form an obtuse angle; the view of defendant's tracks to the east of the highway being obstructed by the watch house for the use of the flagman, located on the east

side of the highway and the south side of the company's right of way, and also by a covered station platform on the east. There was evidence that the view of the defendant's tracks to the east of the highway was also, to a considerable extent, obstructed by two buildings situated on the east side of the highway as well as by certain woodlands to the rear of these buildings.

The evidence (with photographs) also shows that there is a curve in the concrete road leading from Suffolk to the crossing. There is also a curve in the tracks of defendant company at a point to the east of, and about 152 steps distant from, the crossing. At the time deceased approached the crossing, a passenger train of the defendant company was proceeding at a speed of about forty-eight miles per hour toward the crossing also. There is evidence to the effect that in coming around the curve referred to, and on account of the curve, the headlights from the engine projected through the woods at an acute angle to the tracks and toward the opposite side of the crossing from which Johnson was approaching, and did not light the crossing. Johnson's automobile and the train came into collision, as stated, at the crossing; Johnson receiving mortal injuries, from which he died the following day.

Defendant was charged with negligence for its alleged failure, through its watchman, to warn deceased of the approach of the company's train and because of its alleged failure to give the warning signals as prescribed by section 3958 of the Code of 1919.[1]

---

[1] Section 3958.—Every railroad company, whose line is operated by steam, shall provide each locomotive engine passing upon its road with a bell of ordinary size, and steam whistle, and such whistle shall be sharply sounded outside of incorporated cities and towns at least twice at a distance of not less than three hundred yards nor more than six hundred yards from the place where the railroad crosses upon the same level any highway or crossing, and such bell shall be rung or whistle sounded continuously or al-

Every inference from the evidence showed that Johnson was totally unaware of the approach of the train and collided with the train at the rear part of the tender with such force as to break some of the connections.

■ There was a conflict of the evidence on the question of whether the watchman was on duty at the time of the accident, and there is a decided conflict upon the question as to whether the statutory crossing signals were given. There was, however, positive testimony that the engine whistle did not blow and that the bell on the engine did not ring.

In view of the verdict of the jury, upon these conflicts in the evidence, we must take it as established that the statutory crossing signals were not given and that the watchman was absent from his post of duty. It was practically admitted in the argument and established by the evidence that the plaintiff was guilty of contributory negligence. So we have a case here involving the application of section 3959 of the Code to the facts above narrated.[2]

It is assigned as error:

"That the verdict is contrary to the law and the evidence and without evidence to support it, and is excessive, and because the jury did not diminish the damages in proportion to the contributory negligence of the plaintiff, and because of the errors in granting

ternately until the engine has reached such highway crossing, and shall give such signals in cities and towns as the legislative authorities thereof may require.

[2]. Section 3959.—If the employees in charge of any railroad engine or train fail to give the signals required by law on approaching a grade crossing of a public highway, the fact that a traveler on such highway failed to exercise due care in approaching such crossing shall not bar recovery for an injury to or the destruction of property in his charge, where such injury, death or destruction results from a collision on such crossing between such engine or train and such traveler or the property in his charge, respectively, but the failure of the traveler to exercise such care, may be considered in mitigation of damages.

and refusing instructions, in the admission and rejection of evidence, and because the argument of counsel for the plaintiff improperly appealed to the sympathy and prejudice of the jury."

These assignments will be discussed in order as far as it is necessary.

The first assignment of error, viz.: That the verdict is contrary to the law and the evidence and without evidence to support it, involves, under the facts in this case, consideration of the following questions:

(1) Whether the negligence of the plaintiff was the sole proximate cause of the accident, as a matter of law, or whether this was a question for the jury.

(2) Was there any proof of causal relation between the failure to give statutory crossing signals and the accident?

They can be considered together. Counsel for the railway company, in their petition for a writ of error, state that this case presents to this court for the first time this proposition: "Can a man approaching a railroad track in full and plain view of the same, driving an ordinary automobile, which, as a matter of common knowledge, is known to be capable of stopping in a few feet, drive into the side of a train, and subject the railroad company to a suit for damages? If this is so, then it is perfectly clear that a man could close his eyes to what this court has repeatedly called 'a proclamation of danger,' and recover for the consequences of his conduct if he is able to produce a witness or witnesses who will testify that the statutory crossing signals were not given, or that if given were not heard by them."

The last line of the question propounded, "or if given were not heard by them," has no application to the facts of this case, because there was evidence

that the signals were not given, and the jury's verdict establishes this as a fact, which is binding upon this court upon this writ of error.

In addition, the question is incomplete, in that it does not state whether there was any causal relation between the failure to give the statutory signals and the accident. If the failure to give the signals in any way contributed to the accident, then, however grossly negligent the traveler was, he is entitled, under section 3959, to recover, subject to mitigation of his damages in proportion to his negligence. If there was no causal relation between the failure to give the signals and the accident, and this must of necessity, in nearly all cases, be a jury question, then of course the negligence of the traveler becomes the sole proximate cause of his injury and he is not entitled to recover. If there is any harshness in this rule, the remedy must be sought at the hands of the legislature and not at the hands of the courts.

We cannot say in the instant case, in view of the evidence, as a matter of law, that there was no causal relation between the failure to give the statutory signals and the accident, and hence it follows that we cannot say that the deceased's negligence was the sole proximate cause of his injury and death.

Of course, the burden of proof is upon the plaintiff to prove by a preponderance of the evidence that the statutory signals were not given and that an accident followed.

It is not necessary in this case to consider the question of what presumptions arise from a failure to give statutory signals because there was ample evidence of causal relation between the alleged failure to give the signals and the accident which followed to support the jury's verdict.

■ Although the plaintiff's testate is dead and cannot speak, there are many fair inferences from the evidence (amounting to proof), which the jury had a right to draw, that, if the signals had been given, the collision would not have occurred. The jury had a right to infer from the physical conditions surrounding the crossing, heretofore referred to, that the approach of the train, from the position occupied by the deceased, could not have been seen or heard by him in the absence of some signal, until it was too late to avoid the collision. He was driving at a moderate rate of speed, as testified to by eyewitnesses, and there is no evidence tending to support the contention that he attempted to beat the train to the crossing. The deceased had the right to rely to a certain extent upon signals, the watchman, "stop" sign, and the whistle and engine bell. Three eyewitnesses to the tragedy, travelers from another State, stopped their car on the opposite side of the tracks from which the deceased was approaching, one of whom testified that she believes they would have been killed also if she had not accidentally seen the train coming and called the driver to stop the car. They all testified positively that no signals were given, and that the deceased was driving at a careful and moderate rate of speed as he approached the crossing.

■ It is useless to pursue the subject further. We must consider the evidence practically as upon a demurrer thereto, and it is clear from what has been said that, if the jury was properly instructed, and there is no other valid objection assigned, we cannot disturb their verdict. They have found that the statutory signals were not given; that the failure to give them contributed to the collision resulting in plaintiff's testate's death, and that the negligence of deceased was not the sole proximate cause of the accident.

■ Upon all these questions there was a conflict of testimony, on all of them reasonably fair-minded men might differ as to the proper conclusion of fact to be drawn from the evidence. When such is the case, the verdict of the jury is final and conclusive and both the trial court and the appellate court are powerless to disturb it. *W. S. Forbes & Co.* v. *Southern Cotton Oil Co.*, 130 Va. 245, 108 S. E. 15, and cases there cited.

■ ■ We quite agree with counsel for the railway company in their contention that if the sole question of negligence relied on in the instant case had been the failure of the watchman to be at the crossing to stop travelers from crossing upon the approach of trains, there could have been no recovery by the plaintiff, for the reason that there is no provision for apportionment of negligence in such a case and the deceased's contributory negligence would have barred any recovery. The jury were not instructed that it would find for the plaintiff upon such alleged negligence. But we also agree with counsel for plaintiff that this feature of negligence on the part of the railway company could be considered by the jury in apportioning negligence between the parties, and, this being so, we cannot say that the jury's verdict was improper in reducing the recovery from $10,000.00, the maximum verdict in cases of death, to $8,000.00, instead of making a greater reduction as defendant's counsel claims should have been made.

In the case of *Etheridge* v. *Norfolk Southern Ry. Co.*, 143 Va. 789, at page 801, 129 S. E. 683, the court, in referring to the *Gregory Case*, 142 Va. 750, 128 S. E. 272, said: "In the *Gregory Case* it was fairly clear that the plaintiff was guilty of the major negligence but the jury held that the defendant was also guilty of some negligence. The rules of comparative negligence

were applied. A verdict for the plaintiff was returned, which was sustained by this court. To sum up, a cause without which an accident would not have happened is a proximate cause. When that has been established and when it has appeared that the defendant was responsible therefor, the plaintiff is entitled to judgment and this cannot be defeated by showing that he, also, was negligent, however gross that negligence may have been. In such a case the adjustment of rights arising therefrom is by the very terms of the statute left to the jury."

In the case before us the jury evidently weighed the failure of the railway company to give the statutory signals and its failure to have its watchman on hand at the crossing against the failure to use all his senses as an ordinarily prudent man should have done, and in the comparison deducted $2,000.00 for the deceased's negligence. We cannot say their verdict is wrong in this respect. The issue of comparative negligence, as has so often been said by this court, is one for the determination of the jury.

Complaint is made of the action of the court in giving certain instructions asked for by the plaintiff and in refusing certain instructions asked for by the defendant.

Plaintiff's instruction No. 2, objected to, is as follows: "The court instructs the jury that the statute law of this State required the defendant, Southern Railway Company, to sound sharply the steam whistle of its engine twice at a distance of not less than 300 yards, and not more than 600 yeards, from said crossing, and to ring the bell of said engine or blow the said whistle continuously or alternately until its engine had reached said crossing, and if you believe from the evidence that the defendant, Southern Railway Company, failed to perform any of its above-mentioned duties,

in any particular, that the plaintiff's testator was killed by the engine or train of the defendant, and that such failure either caused the accident or contributed thereto, then you shall find for the plaintiff. And if you believe from the evidence that the plaintiff's testator was negligent in any respect in approaching or attempting to cross said crossing, you should, nevertheless, find for the plaintiff, but you must consider the plaintiff's testator's negligence in mitigation of damages."

The objection urged to this instruction is that there was nothing in the evidence from which the jury could affirmatively find, even if they were of opinion that the statutory signals were not given, that the defendant's negligence caused or contributed to the injury. The question raised by this objection has been fully discussed under the first assignment of error and will not be further discussed here. The instruction correctly propounded the law, and as hereinbefore stated there is evidence to support it.

Plaintiff's instruction No. 3, objected to, is as follows: "The court instructs the jury that the signals described in another instruction in this case required to be given by the bell or whistle of the locomotive are by the statute mandatory, and that no other signal, precaution, or warning, such as a flagman, headlight, or the noise from an on-coming train, will relieve the railroad from the failure to give these statutory signals, and that the failure to give such signals pursuant to the statute constitutes negligence on the part of the railroad company."

The objection urged to this instruction is that it ignores the principle that failure to give the signals must have been the cause of, or a contributory cause to, the accident. The instruction does not direct a verdict. It undertakes to tell the jury that the rail-

way company cannot substitute signals for, or rely on, other warnings as substitutes for those required by statute. The instruction would have been more complete if it had concluded "for which the defendant would be liable in damages to the plaintiff provided the jury believes that such failure either caused the accident or contributed to it." But the jury was fully instructed in regard to causal relation in other instructions, notably in instruction No. 2, and the failure to include some such clause in No. 3 was not error. As was said in *Levine* v. *Levine*, 144 Va. 330, at page 335, 132 S. E. 320, 321: "Usually positive error in one instruction cannot be cured by a correct statement of the law in another instruction (*American Locomotive Co.* v. *Whitlock*, 109 Va. 238, 63 S. E. 991), but where the error consists in mere incompleteness in an instruction, such incompleteness may be cured by a fuller statement in another instruction. Instructions are to be read as a whole. *Virginia Ry. & Power Co.* v. *Smith*, 129 Va. 269, 105 S. E. 532; *Henderson* v. *Foster*, 139 Va. 543, 124 S. E. 463, and cases cited."

There was no positive error in instruction 3. The only complaint that can be made of it is that it was not complete. But the jury was fully instructed on the question of causal relation in other instructions, and whatever there was of incompleteness was cured.

The defendant alleges error on the part of the court in striking out the italicised words in instruction A, asked for by the defendant: "The court instructs the jury that the mere fact that the plaintiff's intestate, W. T. Johnson, was injured at the intersection of the highway leading from Suffolk to Portsmouth, Va., with the Southern Railway, in a collision with the defendant's train and an automobile which the plaintiff's intestate was driving, raised no presumption whatever that the defendant, Southern Railway Company was

guilty of negligence, *and, on the contrary the presumption is that the defendant and its agents in charge of the train were not guilty of negligence.* And the court instructs the jury that unless the plaintiff does affirmatively prove by a preponderance·of the evidence to the satisfaction of the jury that the defendant's agents in charge of the train were guilty of the negligences charged in the plaintiff's declaration, and that said negligence of the defendant's agents in charge of the train was the proximate and immediate cause of the injury complained of, then the jury must find their verdict for the defendant.''

It is clear, we think, that there was no error in striking out the italicised words. The sentence immediately preceding this told the jury that a collision with the automobile driven by the plaintiff's intestate raised no presumption whatever that the defendant was guilty of negligence. In view of this and in view of the instructions as to the burden of proof being upon the plaintiff, the jury could not have been misled; nor could they fail to understand that the presumption was that the defendant was not guilty of negligence.

Complaint is made that the court refused instructions D, E, I and L, offered by defendant.

It is unnecessary to quote these instructions. The instructions granted sufficiently informed the jury upon the law of the case. In such a case, even though the instructions correctly stated the law, it was not reversible error for the court to refuse them. On the contrary, trial courts should avoid repetition in instructing the jury as far as possible, as repetition tends to confusion. D, E and I involved questions upon which the jury had already been fully instructed.

Indeed, the court instructed the jury fully and liberally on every aspect of the case, on the burden of proof upon plaintiff to prove negligence on the part of

defendant, on the duty of the railway company to give the statutory signals, on the necessity for causal relation between failure to give the signals and the accident, on the effect of alleged contributory negligence of the deceased, if any, and the duty to mitigate damages if he was guilty of negligence, and finally they were told that if the deceased's death was the result of his own negligence, and not that of the defendant, they must find for the defendant. On the whole, the jury was fully and correctly instructed.

We are asked to set aside the verdict of the jury and grant the defendant a new trial because of alleged improper remarks of counsel for plaintiff in argument of the case.

The record shows that defendant's counsel made no objection to the alleged improper remarks at the time of their utterance, nor was any reference made to them until after verdict, when counsel for defendant moved the court to set aside the verdict because of them. The objection and motion came too late.

In *Wickman* v. *Turpin*, 112 Va. 236, 70 S. E. 514, this court, in disposing of a similar motion, said: "The remaining assignment of error is to the refusal of the court to set aside the verdict and grant the defendants a new trial because of certain alleged improper remarks made by one of the counsel for the plaintiff in his address to the jury. The record shows that the defendants' counsel made no motion to the court to instruct the jury to disregard the language and took no exception thereto until nine days after verdict, when, for the first time, it was made the ground of a motion for a new trial. * *

"If, therefore, there was any merit in the assignment, as to which we need express no opinion, the objection comes too late."

In *P. Lorillard Co.* v. *Clay*, 127 Va. at page 753, 104 S. E. 384, this is said: "But it will be observed

that no objection was made or exception taken to remarks above numbered 3, 4 and 5. They cannot, therefore, be made a ground of reversal in this court. It would be unfair to opposing counsel and to the trial courts to permit it. Remarks are sometimes made by counsel in the heat of debate which they would readily retract if brought to their attention, and which certainly would be corrected by the trial court if brought to its attention. The trial courts are not expected to be alert to discover every remark of counsel that may in any way be prejudicial to the opposing party, and if no objection is made to such remarks it is deemed to be waived. The objection, to be available in this court, should have been made at the time the argument was made, and certainly before the verdict was rendered.

The use of intemperate or otherwise improper language in the argument of a case has, on many occasions, received the condemnation of this court, and certainly should be restrained; but if opposing counsel expect us to reverse a case on account of it, under ordinary circumstances, timely objection must be made and exception taken.

Upon the whole case we see no error which would justify a reversal of the judgment of the circuit court.

*Affirmed.*

RICHMOND, VA., JANUARY 9, 1929.

PER CURIAM:

The original opinion has been slightly amended without changing the result, by omitting as *obiter dictum* any reference to any legal presumption to be drawn merely from proof of the injury and the failure to give the statutory signals, and the petition for rehearing is refused.