## Richmond

### Ralph A. Piccolo and Michele Piccolo, Individually and Trading as Dandy Poultry Company v. A. J. Woodford, Administrator, Etc.

October 8, 1945.

Record No. 2971.

Present, All the Justices.

434

The opinion states the case.

*R. S. Wright, Jr.*, and *F. H. Brumback*, for the plaintiffs in error.

*H. F. Minter* and *Armstrong & Marshall,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

A. J. Woodford, administrator of Lois Ann Woodford, deceased, brought an action in the court below against the appellants for the wrongful death of his intestate, and the jury awarded him damages of $3,000, which was confirmed by the lower court.

There is no material dispute in regard to the facts. On the first day of June, 1943, Harrison Clinedinst was driving a truck alleged to have been owned by the defendants in a southerly direction on North Royal Avenue in the town of Front Royal, and between Third and Fourth streets, when his truck struck the plaintiff's decedent, who was a normal girl twelve years of age, riding a bicycle at the time, and inflicted injuries which caused her death.

The tragic accident was investigated by a member of the State police force and he testified as to certain physical facts. Among them, the truck was found headed in a southerly direction on said avenue four feet from the west curb. Behind the truck fifteen steps from its front a bicycle tire mark appeared in the soft surface of the asphalt street. There were no blood marks on the truck and no brake marks made on the street by the wheels of the truck. On both the left and the right portions of the bumper the dust had been wiped off. The street was forty-one feet, two inches wide, and there were no marks in the street which indicated that the truck had been turned either to the left or to the right prior to the collision with the child. The distance from the intersection of Fourth street to the point where the child was struck was approximately seventy-three feet, and at a point approximately one hundred feet from the intersection the bicycle upon which the child was riding was run over by the truck. The truck was being driven at a speed of from ten to fifteen miles an hour. There was no evidence that the child had been dragged nor that she had

been run over by the wheels of the truck. She was found on the west side of North Royal Avenue about four feet from the curb, and her legs were between the front and rear wheels of the truck. From the impact with the truck she suffered a concussion of the brain which was the cause of her death the next morning.

She had been accustomed to riding a bicycle daily for two or more years. The accident occurred about 6:30 P. M. upon a clear day in June. It had not begun to get dark and the sun was still shining.

At the time of the accident Clinedinst stated to the police officer that he had seen the child coming from the left side of the street upon which the truck was traveling south, and that she cut her bicycle across in front of his truck. He stated that he applied his brakes immediately and that he did not think that the truck moved more than its length.

At the trial he testified that the child was about four feet in front of the bumper of his truck when he first saw her, and that she had been traveling from the left of his truck in a "bias" direction in front and across the line of travel of the truck.

At the time of the accident the truck was registered in the name of Ralph A. Piccolo, of Edinburg, Virginia, and it was engaged in the transportation of chickens from the Valley of Virginia to New York City. The driver of the truck was accompanied by Michele Piccolo, one of the defendants, and the father of Ralph Piccolo. He was riding on the front seat with the driver and returning to New York City. The load of chickens on the truck at the time was to be delivered to Michele Piccolo at his place of business in New York, where he conducted a retail poultry business. The driver of the truck was an experienced truck driver.

Ralph A. Piccolo testified that he owned and operated the business at Edinburg under the firm name of Dandy Poultry Company and that he owned the truck involved in the accident. He further testified that the truck had been de-

livered to him by his brother when the latter was inducted into the army.

The funds derived by the concern were deposited in the bank at Edinburg to the credit of Ralph A. Piccolo, Michele Piccolo, and the Dandy Poultry Company. The land and buildings upon which the business was conducted in Edinburg were conveyed to Michele Piccolo, upon a consideration of one dollar, by Carmine Piccolo, a brother of Ralph, at the time Carmine was about to go overseas.

There are a number of assignments of error. One is that the verdict should be set aside because it is contrary to the law and the evidence and without evidence to support it. We do not think there is any merit in this assignment. The facts establish that the child was struck by the truck while she was riding her bicycle in front of the truck, in daylight, on a clear day; that there was no other traffic to interfere with the truck driver changing his course or stopping if necessary. If the truck driver had maintained a proper lookout he should have seen the child overtaking him from the left side of the cab window if she came from that direction, and governed himself accordingly. In fact he told the police officer a short time after the accident that he actually saw her overtaking him from his left, but upon the witness stand he testified he did not see her until she was just four feet in front of him. Whether she came from his left or whether she was riding immediately in front of him makes little difference. The jury had the right to infer that he had ample opportunity to have saved her. From the testimony and the physical facts the jury reasonably could have inferred that the child was riding her bicycle in front of the truck four feet from the west curb, and that the driver of the truck failed to see her and ran her down. In this event, they could have found that he failed to keep a proper lookout. On the other hand if she actually overtook the truck, coming from the truck driver's left, he could not have failed to see her had he been looking, for she is bound to have been within his field of vision, and when she cut in front of him she is bound to have been in his direct vision.

Michele Piccolo, one of the defendants, was riding in the truck on the seat with the driver. He did not see fit to testify in the case. He evidently saw or could have seen just as much as did the driver. He now claims in his petition for a writ of error that the truck was not owned by him, nor was it being driven in connection with his business, and for that reason the judgment should not have been against him. There are many circumstances which sustain the proposition that Michele Piccolo was the owner of the truck, or had an interest therein, and that it was being driven in connection with his busniess. For instance, it was shown that the building in Edinburg where the business was conducted stood in his name as owner; that he operated a poultry business in New York, and large shipments of chickens were made to him from the Edinburg plant; that he frequently came to Edinburg and visited the plant and looked at the chickens; that the bank account for the business in Edinburg was in his name and in the name of Ralph A. Piccolo; that Ralph had paid nothing for the business; that the shipment of chickens contained in the truck at the time of the accident was destined to Michele Piccolo's place of business in New York, and he was riding in the truck at the time; and that he failed to testify in the case and failed to give his deposition. From these significant circumstances the jury were clearly warranted in finding that he was either the owner or a partner in the business conducted at Edinburg, and that he either owned or had an interest in the truck which was being driven in his business when it collided with the child, and that his son, Ralph, was simply operating the business in Edinburg for him. In the light of these circumstances, the jury were not required to believe the testimony of Ralph to the effect that he alone owned the business and the truck.

It is needless to restate the principles which we have said must control the conduct of a driver of an automobile or truck when he sees or should see a child or children on the highway over which he is driving. It will suffice to refer to

one of our later statements on the subject which is found in *Scott* v. *Crawford*, 172 Va. 517, 2 S. E. (2d) 301.

■ Another principle, which applies here with considerable force under the circumstances appearing in this case, is that when a party to litigation is in possession of vitally material facts and fails to testify to them a presumption is indulged that if he had testified his testimony would not have supported his theory of the case. *Lipman* v. *Norman Packing Co.*, 146 Va. 461, 131 S. E. 797, and *Stockton* v. *Charlottesville*, 178 Va. 164, 16 S. E. (2d) 376.

The verdict of the jury and the judgment of the court have absolved the plaintiff's intestate of contributory negligence, and we think the evidence supports the jury's finding that the driver of the truck was guilty of negligence which was the proximate cause of the death of the child. We must therefore affirm the judgment, unless there appears in the record some reversible error of law committed by the court below.

■ The instructions granted by the court were not the subject of any exception. Upon elementary principles we accept them as the law of the case.

A demurrer was interposed to the notice of motion for judgment setting forth three grounds. The trial court sustained it as to one ground and overruled it as to the other two grounds. This action of the court is challenged here but we perceive no reversible error in this ruling. In any event the defendants did not move for a bill of particulars. This was the proper motion to be made if there were any uncertainty in the notice of motion. In any event, a reading of it will convince one that the court was correct in its ruling.

A point is made of the court's failure to grant a continuance of the case. A witness, Mrs. Helen Moyer, who resided in Philadelphia, Pennsylvania, was not present at the trial. The defendants requested a continuance on account of her absence. It was shown that she was a material witness. The request was for a continuance of a few days but the engagements of the court were such that it could not

fix a new date for trial convenient to itself for some two months. The efforts to secure the presence of this witness were that counsel for petitioners on November 1, 1944, some nine or ten days before the time set for the trial, wrote Mrs. Moyer and tried to arrange for her presence. Later counsel talked with her on the telephone on November 5th and was informed that she was employed in a war plant and had difficulty in getting off from her work. She informed counsel that she would get in touch with him the next morning if she experienced difficulty in getting off from her work. On November 7th counsel attempted to communicate with her by telephone but was unable to reach her. He then wired her on November 8th and again attempted to communicate with her by telephone without success.

Mrs. Moyer and her husband were driving in an automobile immediately behind the truck at the time of the accident. This placed them in a position where they might have seen the child riding the bicycle. However, the lower court was of the opinion that she would not know any more about the accident than Michele Piccolo who was one of the defendants and riding on the front seat of the truck at the time of the accident.

No attempt was made to take the deposition of the witness. The general rule is that a motion for a continuance is within the sound discretion of the trial court. Here it was not shown that the witness would likely be produced if the case had been continued to a later date. Such a showing was necessary. *Howard* v. *Commonwealth*, 174 Va. 417, 4 S. E. (2d) 757. The court below did not abuse its discretion in refusing the continuance.

During the argument of counsel, and after the instructions had been read to the jury, counsel for the plaintiff read from a volume of the South Eastern Reporter an excerpt from an opinion of this court in *Harris* v. *Wright*, 172 Va. 67, 200 S. E. 597. Error is assigned to this conduct. If proper exception had been preserved this error would

have justified a reversal of the judgment. However, as we shall see, the error was waived.

The excerpt read was but a reiteration of what this court has repeatedly held in regard to the duty of the driver of a motor vehicle owing children who may be on the highway. In fact the substance of the principle contained in the excerpt was embraced in one of the instructions given the jury. The trial court in its written opinion, in our judgment, readily and correctly disposes of the question in this language:

"Prior to the reading of the improper matter, upon defendants' objection, the court cautioned the jury that whatever was read should be considered as being said only by counsel. The court thought that this satisfied counsel in their objection. After trial, it turns out that one of defense counsel had said 'I except' and his associate had noticed that this further protest was not heard by the court. If counsel desired to press his associate's objection, he should have brought it home to the court by repetition. After the quotation was read and its improper nature was understood, the court was prepared to sustain a motion to direct the jury to disregard it. No such motion was made, though the court was without knowledge that there was any objection to the previous ruling. Considering the scope of the field of jurisprudence, and that a trial judge often must rule on objections to evidence and argument without opportunity for deliberation error is likely enough when the objection and its grounds are brought clearly to his attention. When, as here, counsel fail to protest, the error must be considered waived. *Jackson* v. *Chesapeake, etc., Ry. Co.*, 179 Va. 642, 651, 20 S. E. (2d) 489."

In *Cooke* v. *Griggs*, 183 Va. 851, at page 858, 33 S. E. (2d) 764, this court, speaking through Mr. Justice Spratley, had this to say:

"It may be further added that the objection to the argument as being improper was not timely made. This court has held frequently that objection to improper argument before a jury should be made at the time of such

argument. There are no unusual circumstances which justify an exception to that rule in this case. *Southern Ry. Co. v. Johnson*, 151 Va. 345, 143 S. E. 887, 146 S. E. 363; *Majestic Steam Laundry v. Puckett*, 161 Va. 524, 171 S. E. 491; *Chesapeake, etc., Ry. Co. v. Folkes*, 179 Va. 60, 18 S. E. (2d) 309."

We are of opinion that the judgment should be affirmed.

*Affirmed.*