# Staunton

## Gerald Darwin Burks, An Infant, Etc. v. Annabelle Webb, Administratrix, Etc.

September 6, 1957.

Record No. 4685.

Present, All the Justices.

The opinion states the case.

*George A. Revercomb, Jr.* and *Edmund Revercomb,* for the plaintiff in error.

*Hale Collins (John T. Delaney,* on brief), for the defendant in error.

Hudgins, C. J., delivered the opinion of the court.

This is an action for the wrongful death of James Edward Webb, alleged to have been caused by the negligence of Gerald Darwin Burks, a 19 year old young man, that resulted in a verdict and judgment of $12,500 in favor of Annabelle Webb, decedent's widow and administratrix of his estate. Burks appeals.

The parties will be hereinafter designated plaintiff and defendant, according to the positions they occupied in the trial court.

Defendant's various contentions present the following questions: (1) Was plaintiff's decedent guilty of contributory negligence as a matter of law? (2) Did the court err in its refusal to admit certain evidence offered by defendant, in its ruling on instructions, or in its refusal to discharge the jury on grounds hereinafter stated?

Plaintiff, the successful litigant in the trial court, is entitled to have the evidence considered in the light most favorable to her. The accident occurred at approximately 10:30 p.m., on December 17, 1955, at or near the intersection of Monroe and Prospect streets in the city of Covington, Virginia. Monroe street is a part of U. S. Route No. 60 within the city. It extends approximately east and west, is 50 feet wide, including 33 feet, 8 inches of paved roadway, and 10 feet, 2 inches for a sidewalk right of way on the south side and 6 feet, 2 inches for a sidewalk right of way on the north side. Prospect street extends approximately north and south, is 60 feet wide, including 27 feet of paved roadway, and 16 feet, 6 inches on each side for sidewalks. Monroe street is practically level and straight for several hundred feet east and west of its intersection with Prospect street. Movement of traffic at the intersection was not regulated by traffic officers, or traffic devices, nor were there any clearly marked lines on the highway indicating the prolongation of the lateral boundary lines of adjacent sidewalks for the use of pedestrians. The intersection was well illuminated by a street light; the weather was clear and the streets were dry.

Immediately before the accident, James Edward Webb, who lived on Prospect street north of Monroe street, walked east along the south side of Monroe street to Prospect street, passing some distance

west of Prospect street Clayton P. Bess and Trudy Mundy, a teen-age couple walking east along the same side of Monroe street. Webb crossed Prospect street to the southeast corner of the intersection, near a telephone pole. From this point he started north across Monroe street and was struck by the left headlight of defendant's automobile going east, at or near the midway point between the north and south curbs of Monroe street. His body was seen "flying through the air," then sliding on the pavement and stopping very close to a metal bus stop sign erected on the edge of the north curb of Monroe street, at its intersection with Prospect street. Officers arrived soon after the accident and took Webb to the hospital where he died during the night from the injuries received in the collision.

Defendant's own testimony vividly portrays his negligence. He testified that on the day in question he and his friend, Arnold Warlitner, had taken two girls to Roanoke for Christmas shopping. They returned to Covington, went to a movie and after taking the two girls home, defendant was taking Warlitner to his home, driving 20 to 25 miles per hour east on Monroe street when he struck decedent. Before reaching Prospect street, he saw Clayton P. Bess and Trudy Mundy walking east on the south sidewalk of Monroe street. He turned his head to the right, looked through the side window of his automobile at the couple, thought he recognized Bess but did not know the girl. His cross-examination is in part as follows:

"Q. And then you approached Prospect and continued to look down Prospect to see if any car was coming?

"A. They were near Prospect Street.

"Q. But you continued to look down Prospect Street?

"A. Yes, sir.

"Q. Then when you turned back to the road you saw Mr. Webb and hit him about the same time?

"A. Yes, sir.

\*　　\*　　\*　　\*　　\*　　\*　　\*

"Q. Now then, you say that was a second. Then did you put your eyes back on the road in front of you?

"A. When I turned my eyes to the road Mr. Webb was immediately in front of the fender.

"Q. He was immediately in front of the fender?

"A. Yes, sir.

"Q. When you saw Mr. Webb could you avoid hitting him in any way?

"A. No, sir, I couldn't. If there had been some way to avoid hitting him I would have taken it.

"Q. What did you do?

"A. I applied my brakes as soon as possible but I don't believe the brakes took hold until after the car actually hit him, and I pulled the wheel just a slight bit to the right.

"Q. In other words, you did what you could in that time from what you say. Is that it?

"A. Yes, sir, I did what I could but wasn't anything I could do to avoid hitting him. *I was too close to avoid hitting him.*

\*　　\*　　\*　　\*　　\*　　\*　　\*

"Q. Now, the speed you were driving and the conditions there if you had seen Mr. Webb, if things had been different and *you had seen him as you actually entered the intersection, you could have slowed up and stopped and missed him, could you not?*

"A. Yes, sir, I think I could have.

"Q. The way the accident happened when you hit he had gotten to your left front light?

"A. Yes, sir.

"Q. Almost past the car, we will say, is that right?

"A. Yes, sir.

"Q. How much would your car have had to move to the right to have missed him completely?

"A. *I would say six inches at least would have cleared him.*" (Italics added).

Defendant contends that even if he were guilty of negligence, plaintiff's decedent was guilty of contributory negligence as a matter of law which bars recovery. This contention is based on two theories—one is that decedent was attempting to cross Monroe street between intersections and not at a regular pedestrian crossing; and the other is that decedent failed to see or, if he saw, failed to heed the danger of defendant's approaching automobile when he attempted to negotiate the crossing.

It is conceded that "some dry dirt and the visor" of the left headlight of defendant's automobile were lying in the center, or slightly to the south of the center, of Monroe street and that these indicated

the point that defendant's automobile struck decedent. The tire marks of defendant's left rear wheel on the pavement began four feet west of the dirt and visor and extended 49 feet to where the automobile was stopped. The tire marks of the right rear wheel extended only 29 feet. The automobile stopped 45 feet east of the dirt and approximately two feet south of the center of Monroe street. Decedent was knocked unconscious and his body found one to two feet south of the north curb of Monroe street, near a bus stop sign, as stated.

The physical facts, as they appeared to the witnesses immediately after the accident, may be more easily grasped from a sketch, not drawn to scale, attached hereto. The letter "A" on the sketch, indicates the point in the street where witness P. H. Kemper testified that he found the dirt and visor, which he said was near the center of Monroe street and in the center of the prolongation of the lateral boundary lines of the eastern sidewalk of Prospect street. Letter "B" indicates the point that defendant's witnesses testified they observed the dirt and visor, that is, opposite the telephone pole on the south side of Monroe street which is five feet east of the prolongation of the eastern property line of Prospect street. Letter "C" indicates the point that witnesses for both plaintiff and defendant testified the body of decedent was found after he was struck. Letter "D" indicates the place that defendant's car was stopped immediately after the collision.

Since the parties agree as to the point in the street where decedent's body was found after the collision, it is more reasonable to believe that the collision occurred at point "A", as stated by plaintiff's witness, than at point "B", as claimed by defendant. Certainly it is more logical to conclude that decedent's body was knocked eastward, the direction which the car was going when it struck him, rather than westward, the direction from which the car was traveling. Indeed, Kemper testified that the "impact had knocked him [decedent] across the street and east along the street."

The foregoing evidence fully warranted the jury in concluding that decedent was attempting to cross Monroe street at a regular pedestrian crossing, that is, within the prolongation of the lateral lines of the sidewalk on the east side of Prospect street. This being true decedent was entitled to the right of way at the crossing, and there was imposed upon defendant the duty to yield the right of way to him, or to change his course, slow down, or come to a com-

plete stop if necessary, in order that decedent might "safely and expeditiously" cross the intersection. Code. § 46-244.

There is no direct testimony tending to prove that decedent looked or, if he looked, whether he saw defendant's automobile approaching from his left. In the absence of evidence to the contrary he is presumed to have exercised ordinary care for his own safety. There was a street light which well illuminated the intersection. Clayton P. Bess, a witness for defendant, testified that he saw decedent cross Prospect street and step from the curb of Monroe street, just east of the telephone pole, into the street. He did not pay any further attention to decedent until he looked again and "saw the car right on him and it hit him." If decedent had looked before leaving the sidewalk he could and doubtless would have seen defendant's automobile between 85 and 110 feet away, approaching at a moderate rate of speed, 20 to 25 miles per hour. Indeed, decedent had safely crossed approximately half of the 33 feet, 8 inches of the paved portion of Monroe Street before he was struck. There remained approximately 15 feet between decedent and the south curb of Monroe street for defendant to use in avoiding the collision.

The evidence on this issue is quite similar to the evidence stated in *Bethea* v. *Virginia Elec., etc., Co.*, 183 Va. 873, 879, 33 S. E. 2d 651, where Mr. Justice Eggleston, speaking for the court, said:

"According to the evidence for the plaintiff, when he and his companion started across the street the bus was some 'two bus lengths' to the east of Wide street, or approximately seventy feet from the pedestrian crossing which they were using, and was approaching, as the plaintiff said, at a 'moderate speed.' It was for the jury to say whether an ordinarily prudent person would have undertaken to have crossed in front of the vehicle under the circumstances stated.

"Neither was it necessary for the plaintiff to have looked continuously at the approaching bus as he crossed. * * * If he was crossing at a proper place, the plaintiff had the legal right to assume that the driver would give him the right of way, a right which the drivers of motor vehicles too often overlook. Whether the plaintiff was exercising a reasonable lookout for his safety as he crossed the street was a question for the jury."

Mr. Justice Spratley, speaking for the court in *Pointer* v. *Green*, 193 Va. 757, 762, 71 S. E. 2d 155, quoted with approval the following extract from *Sawyer* v. *Blankenship*, 160 Va. 651, 658, 169 S. E. 551:

" 'The duty of a motor vehicle driver on approaching an intersection is to keep a vigilant lookout for pedestrians between curbs on the traveled portion of the highway, and when pedestrians are negotiating the crossing or about to step from the side into traffic lanes, to operate his car at such speed and under such control that he can readily turn one way or the other, and, if necessary, bring his machine to a stop in time to avoid injury to pedestrians.' " *Danner* v. *Cunningham*, 194 Va. 142, 72 S. E. 2d 354.

A review of all the evidence convinces us that decedent was not guilty of contributory negligence as a matter of law.

Defendant complains of the ruling of the court in rejecting evidence, offered by him, tending to prove that plaintiff had received $10,000, the proceeds of an insurance policy for the accidental death of decedent. Such evidence is not admissible. It is well settled that damages recoverable for personal injuries or death, caused by the negligence of another, can not be reduced by reason of the fact that the injured party or his estate has been partly compensated for the loss by the proceeds of an insurance policy. The basic reason for the rule is that a defendant, who by his negligence has injured another, owes to such other full compensation for the injuries inflicted by him, and the payment for those injuries from a collateral source, in no way relieves such defendant of his obligation. *Johnson* v. *Kellam*, 162 Va. 757, 175 S. E. 634; *Owen* v. *Dixon*, 162 Va. 601, 175 S. E. 41; 15 Am. Jur., Damages, § 201, p. 617.

Defendant also complains of the refusal of the trial court to permit him to introduce evidence tending to show that plaintiff's decedent was drinking at the time of the accident.

Defendant, in his original grounds of defense, made no reference to decedent's drinking or being under the influence of intoxicants, nor was this subject mentioned in his "Additional Grounds of Defense" subsequently filed. After plaintiff had introduced some evidence in her behalf, defendant asked leave of the court to amend his grounds of defense by adding "decedent was drinking" at the time of the accident. The court overruled the motion, but later modified its ruling by stating that it would permit defendant to amend his grounds of defense by adding "decedent was under the influence of intoxicants" at the time of the accident. Defendant declined to take advantage of this ruling and offered evidence that was rejected by the court, tending to show that there was an odor of intoxicants on decedent's breath. Two of defendant's witnesses, out of the presence of the

jury, stated there was an odor of alcohol on decedent at or near the scene of the accident. A stipulation of counsel, not submitted to the jury, was filed to the effect that if Dr. R. M. Jameson, who treated decedent at the hospital, had been called as a witness he would have testified that there was nothing about the speech or behavior of decedent that would indicate he was under the "influence of anything." This Doctor would have also said: "He didn't have any strong odor of alcohol. I guess probably if he hadn't said he had been drinking I wouldn't have thought he had been." The mere odor of intoxicants on the breath of a person is not evidence of negligence. Under the circumstances, the court did not commit reversible error in rejecting the evidence offered. See Code, § 18-75.3.

Defendant's next contention is that the court committed reversible error in giving and refusing instructions. His objections to only two instructions, A and K given for plaintiff, merit discussion.

It is stated in the verdict that: "The Jury finds for the plaintiff as per Instruction A. We find for the plaintiff the sum of $12,500.00 in damages." It is unusual for a jury to state in its verdict that it bases its finding on one specific instruction. However, this instruction states all the essential elements necessary for plaintiff to establish her case. The instruction reads as follows:

"The Court instructs the jury that if you believe from the evidence that James E. Webb, the deceased, pedestrian, started across Monroe Street at the intersection of Prospect Street before the car of the defendant, Gerald Darwin Burks, reached the intersection of Monroe Street and Prospect Street, then you are instructed that he, James E. Webb, pedestrian, had the right of way over the car driven by the defendant and it was the duty of the defendant to either change his course, slow down, or come to a complete stop if necessary to permit the pedestrian, James E. Webb, to safely and expeditiously make the crossing, and if you find that on the occasion in question the pedestrian, James E. Webb was exercising due care for his safety and that the defendant disregarded his duty as above set out and that the same was the proximate cause of James E. Webb's injury and death, you must find for the plaintiff."

Defendant objected to this instruction on the grounds that it was a finding instruction; that it assumed decedent was crossing at the intersection; that decedent had a right to cross the street when defendant's automobile was in dangerous proximity, contrary to the duty imposed upon decedent by statute; and that there was no evi-

dence in the record tending to show decedent was crossing at the intersection when struck.

A careful reading of the instruction clearly reveals that it is not subject to the construction or interpretation placed on it by defendant. While it is a finding instruction, it is hypothetical in form, states the duty imposed by law upon defendant and upon decedent, and concludes that "if you find that on the occasion in question the pedestrian, James E. Webb was exercising due care for his safety and that the defendant disregarded his duty as above set out and that the same was the proximate cause of James E. Webb's injury and death, you must find for the plaintiff."

We have hereinbefore stated that the jury had a right to believe decedent was struck in a regular pedestrian crossing, and that whether decedent was exercising due care in negotiating the crossing was a question for the jury. There was no other traffic on the highway and plaintiff's decedent was in plain view of defendant, who testified that if he had seen decedent as his automobile entered the intersection from the west he "could have slowed up, stopped and missed him." He did not see decedent because he was not keeping a proper lookout.

The evidence in this case is strikingly similar to the evidence in *Marshall, Adm'r. v. Shaw*, 196 Va. 678, 85 S. E. 2d 223, where we reversed the judgment of the lower court solely because it refused to give an instruction in the language of Instruction A, except for appropriate changes in names and locations. The reasons there given in support of the validity of the instruction apply with equal force in this case. We adhere to that decision and hold that the giving of Instruction A was not reversible error.

Instruction K, as requested by plaintiff, was couched in the following language:

"The Court instructs the jury that where the defendant relies for his defense upon contributory negligence on the part of the deceased, James E. Webb, such contributory negligence is not presumed, but the burden is upon the defendant to prove such contributory negligence *by a preponderance of the evidence*." (Italics added.)

On defendant's objection to the instruction the court struck out the italicized language and substituted therefor the phrase, "to the satisfaction of the jury." Defendant repeated and enlarged his objection to the instruction as amended, and insisted there was no burden on him to prove either "by a preponderance of the evidence" or

"to the satisfaction of the jury" that decedent was guilty of contributory negligence.

Defendant's argument in this Court is somewhat confusing.   In his opening brief he relies on the objections made in the trial court, namely, that there was no burden on him to prove contributory negligence of decedent, but in his reply brief he states: "We contended that the burden was on the defendant to show contributory negligence, unless the evidence on behalf of the plaintiff showed that the plaintiff's decedent was guilty of contributory negligence or unless contributory negligence is inferred from the facts and circumstances in the case."

It is well settled in this jurisdiction and many others, (1 Sherman and Redfield on Negligence, § 123, p. 297), that in tort actions to recover compensation for personal injuries or death, the injured party or deceased is presumed to have exercised ordinary care for his own safety, and that the burden is upon defendant to prove contributory negligence of the injured party or decedent by a preponderance of the evidence, unless such contributory negligence is disclosed by plaintiff's evidence or can be fairly inferred from the circumstances.

The distinction between the two phrases, "by a preponderance of the evidence" and "to the satisfaction of the jury" was discussed, and the use of the latter phrase instead of the former in an instruction was held to be harmless error in an opinion by Mr. Justice Buchanan in *Norfolk Southern Ry. Co.* v. *Harris,* 190 Va. 966, 59 S. E. 2d 110.

The phrase in an instruction, "unless the plaintiff does affirmatively prove by a preponderance of the evidence and to the satisfaction of the jury," was held to be harmless error in *Shiflett's Adm'x.* v. *V. R. & P. Co.,* 136 Va. 72, 116 S. E. 500.   Judge Burks, speaking for the court, there said:

"The primary meaning of 'satisfy' is 'to cause to have enough' (Standard Dictionary), and it was in this sense that the word 'satisfaction' was used in *Perkins* v. *Southern R. Co.,* 117 Va. 351, 353-4, 85 S. E. 401, where, on a demurrer to the evidence, it was said 'the burden rested on the defendant to establish the plaintiff's negligence to the satisfaction of the jury.'   It was not intended to require more than a preponderance of the evidence.   Indeed, the preponderance of the evidence is all that is usually required in civil cases, and when both phrases are used it is not intended to increase the burden, but

merely to emphasize the extent of it." 136 Va., at page 84.

Judge Burks further stated that objection to the use of the language "by a preponderance of the evidence and to the satisfaction of the jury" had been made in at least two petitions for writs of error. While the writs were refused, the instructions containing this *quantum* or degree of proof had been discussed at length in conference and the writs refused, "not because we approved that method of expression, but because if error it was deemed to be harmless. It is an alternative expression to convey the same idea that to justify a recovery the jury must be satisfied that the evidence does preponderate in favor of the party having the burden of proof, and not render a verdict upon a mere guess or random judgment. It is to guard against the latter rather than to increase the burden of proof in cases of this kind that the combined expression has been regarded as harmless. * * * It would be better to use only the standard formula of a preponderance of the evidence, but in view of the explanation of the construction that we have put upon the additional phraseology used it is not likely that juries could be misled by them." 136 Va., at page 86.

The *quantum* or degree of proof required by the use of the phrase "to the satisfaction of the jury" is not as heavy or great as the combined expressions, "by a preponderance of the evidence and to the satisfaction of the jury," which we have heretofore held to be harmless error. However, we again repeat that it is preferable, when instructing the jury on the burden of proof, to use the phrase "preponderance of the evidence," which is the generally accepted standard for ordinary issues in ordinary civil cases. See an interesting discussion of this subject in Law of Ev., Va. & W. Va., (Nash, 1954, Michie Co.), §§ 197, 205 and 207.

An instruction substantially the same as Instruction K, as requested by plaintiff, was discussed in *Yeary* v. *Holbrook*, 171 Va. 266, 283, 198 S. E. 441, where we said:

"The usual form of expressing the burden of proof on the question of contributory negligence is to conclude the instruction with the statement 'unless such contributory negligence is disclosed by plaintiff's evidence or can be fairly inferred from the circumstances,' or some similar statement. The failure to add the qualifying clause or some similar phrase is not error in this case because the record discloses that none of plaintiff's evidence tends to establish contributory negligence, nor could such negligence be inferred from the

facts and circumstances testified to by him and his witnesses." The same conclusion applies to the evidence introduced by plaintiff in the case now under consideration, that is, such evidence considered alone is insufficient to prove that decedent was guilty of contributory negligence.

The object of instructions is to fully and fairly inform the jury of the legal principles applicable to the pertinent evidence. The court in this case gave 12 instructions, 6 on the request of plaintiff and 6 on the request of defendant. One of the six requested by plaintiff was on contributory negligence; four of the six given on the request of defendant were on contributory negligence and each was a finding instruction. These instructions, to which there were no objections, fully presented to the jury the law of contributory negligence applicable to the evidence in this case.*

The long established rule of this Court is that: "All instructions must be read in the light of the evidence, and if when so read they

---

* The four instructions on contributory negligence given on the request of defendant are:

Instruction No. 2: "The Court instructs the jury that unless they believe from a preponderance of the evidence in this case that the defendant, Gerald Darwin Burks, was guilty of negligence, and that such negligence was the sole proximate cause of the injuries of James Edward Webb resulting in his death, and unless the jury further believe from the evidence that James Edward Webb was not guilty of any negligence that proximately caused or contributed to his injuries and death, that then the jury shall return a verdict in favor of the defendant, Gerald Darwin Burks.

"The Court further instructs the jury that 'preponderance of the evidence' means the evidence which has the greater weight and is the most convincing in the minds of the jurors."

Instruction No. 4: "The Court instructs the jury that if they believe from the evidence that James E. Webb was guilty of negligence in attempting to cross Monroe Street in front of the automobile operated by the defendant, and that such negligence on the part of the said Webb proximately contributed to the accident, then the jury should find their verdict in favor of the defendant, Burks, even if the jury should believe that the defendant was also guilty of negligence."

Instruction No. 5: "The Court instructs the jury that if they believe from the evidence that both James E. Webb and Gerald Darwin Burks were guilty of negligence, and that the negligence of both proximately contributed to the accident, then the jury should find their verdict in favor of the defendant, Burks."

Instruction No. 6: "The Court instructs the jury that if they believe from the evidence that the decedent, James E. Webb, undertook to cross Monroe Street either at the intersection of Monroe and Prospect Streets or east of said intersection, without looking for approaching traffic, or, if looking, failed to see or heed the automobile operated by the defendant, and that said automobile was obvious and in dangerous proximity to the said Webb, when he undertook to cross Monroe Street, that then the said Webb was guilty of negligence, and if the jury further believe that such negligence of the said Webb proximately contributed to the accident, then the jury should find their verdict in favor of the defendant, Burks."

are not misleading, technical errors as to abstract propositions are not regarded as prejudicial." *Bourne* v. *Richardson*, 133 Va. 441, 459, 113 S. E. 893; *Va. Ry. & P. Co.* v. *Smith & Hicks*, 129 Va. 269, 105 S. E. 532; *Richmond Ry., &c., Co.* v. *Garthright*, 92 Va. 627, 24 S. E. 267, and authorities there cited.

The jury could not have been misled by the instructions on contributory negligence. We hold, therefore, that the giving of Instruction K, as amended, was not reversible error.

Defendant contends that the trial court committed reversible error in its refusal to sustain his motion to discharge the jury. In stating to the trial court the basis of his motion, counsel for defendant said:

"If your Honor please, it has developed here that the witness, P. H. Kemper, has made a change from what we understood he would testify to which necessitates impeaching his testimony and he has got a brother on the jury, C. W. Kemper, and we feel under the circumstances here that it would be very difficult to get a favorable verdict with his brother on the jury when the witness has been impeached. We want to move, because we don't think we can get a fair consideration by this jury, for the court to discharge the jury and not let this jury try this case."

P. H. Kemper, a police officer for the city of Covington for the past 13 years, arrived on the scene a few minutes after the accident. A transcript of his testimony given in a trial of defendant on a criminal charge growing out of the accident was available to both litigants. He was summoned in this case as a witness for defendant and was called as a witness for plaintiff. It appears that before the peremptory challenges and before the jury was sworn, defendant's counsel, out of the presence of the prospective jurors and in the presence of the attorney for plaintiff, informed the court that P. H. Kemper, who was expected to be called as a witness was a brother of C. W. Kemper, whose name was on the jury list. The court stated that this relationship did not disqualify the juror. No objection was made to this ruling of the court by either party nor did either litigant, in the exercise of his or her peremptory challenges, strike C. W. Kemper's name from the panel. See *Core* v. *Core's Adm'rs.*, 139 Va. 1, 124 S. E. 453.

Defendant knew when he permitted, without objection, C. W. Kemper to be sworn as a juror that P. H. Kemper would be a material witness in the case. His motion to discharge the jury was

made after it developed that Kemper's testimony was not in accord with what he hoped and thought it would be. Even if the relationship between the juror and the witness were a sufficient reason for disqualifying the juror, defendant with full knowledge of this relationship accepted him as a juror without objection. His objection to the qualification of the juror and his motion to discharge the jury came too late. Code, §§ 8-199, 8-201, 8-202; *Doyle* v. *Commonwealth*, 100 Va. 808, 40 S. E. 925; *Davis* v. *Webb*, 190 Va. 997, 59 S. E. 2d 116; *Huddleston* v. *Commonwealth*, 191 Va. 400, 61 S. E. 2d 276; *Petcosky* v. *Bowman*, 197 Va. 240, 89 S. E. 2d 4.

Defendant's final contention is that the court erred in its refusal to sustain his motion to discharge the jury for improper argument of plaintiff's counsel. This motion was made after the case had been submitted and the jury had retired to consider of their verdict.

There is no merit in this contention. The decision of the trial court on the question of improper argument of counsel is within its sound judicial discretion and its ruling will not be disturbed on appeal unless the record shows an abuse of that discretion. *Cape Chas. Flying Ser.* v. *Nottingham*, 187 Va. 444, 47 S. E. 2d 540, and authorities there cited. If objection is made during the argument, the judge has an opportunity to stop improper argument, and make a timely and effective ruling thereon. Except under unusual circumstances, objection to improper argument must be timely made and if not made until after the case has been submitted to the jury, it comes too late. *Brann* v. *F. W. Woolworth Co.*, 181 Va. 213, 24 S. E. 2d 424; *Cooke* v. *Griggs*, 183 Va. 851, 33 S. E. 2d 764; *Piccolo* v. *Woodford*, 184 Va. 432, 35 S. E. 2d 393; *P. Lorillard Co.* v. *Clay*, 127 Va. 734, 104 S. E. 384; *Southern Ry. Co.* v. *Johnson*, 151 Va. 345, 146 S. E. 363; *Armstrong* v. *Rose*, 170 Va. 190, 196 S. E. 613; *Bloxom* v. *McCoy*, 178 Va. 343, 17 S. E. 2d 401; *Chesapeake & O. Ry. Co.* v. *Folkes*, 179 Va. 60, 18 S. E. 2d 309.

The verdict of the jury is supported by the preponderance of the evidence. There is no reversible error in the various rulings of the trial court, and therefore the judgment is

*Affirmed.*