## CIRCUIT COURT OF FREDERICK COUNTY

Wilson

v.

Wilson

October 29, 1982

Case No. (Chancery) 6801

By JUDGE ROBERT K. WOLTZ

This is my opinion letter on the defendant's motion to quash service of original process in this divorce suit. Defendant claims service was had by posting purportedly at his usual place of abode, but that at that time, such place was no longer his usual place of abode.

The parties had been married for a few months short of two years, and had been living during their married life at the dwelling where the process was posted, the dwelling being the property of the defendant husband's parents. On March 4, 1982, the complainant wife moved out of this house, leaving the defendant and their infant child there, and she has not returned to it. On March 26th, she instituted this suit for divorce alleging physical cruelty and praying for custody of the child, for spousal and child support and for injunctive relief against threats or harassment of the complainant by the defendant.

On March 30 the Sheriff through one of his deputies made service of process of the subpoena in chancery and bill of complaint, a praecipe, a motion for restraining order and motion for relief *pendente lite* "by going to the usual place of abode" of the defendant, and neither

he nor any family member over sixteen being found there, "by leaving a true copy [of the various papers] posted at the front door of said place of abode" in compliance with the substituted service provisions of § 8.01-296(2)(b).

The motion to quash was filed April 7th, asserting the place of service had not been his place of usual abode since some time prior to the date of institution of the suit on March 26th. It does not set forth where his subsequent residence has been.

The matter was heard *ore tenus*, the defendant appearing specially by counsel only. Counsel filed memoranda of law on the matter subsequent to the hearing.

The complainant herself was her sole witness. She testified that she, the defendant and their child resided at the place process was posted but that she left there the night of March 4th due to severe physical assaults and cruelty of the defendant, being unable to take her child with her and taking refuge in a shelter for abused women. Since that time she had seen the defendant only once and briefly about two weeks later in the Office of the Juvenile and Domestic Relations District Court; that she had no idea where the defendant might be though his parents lived in College Park, Maryland; that he had worked at an industrial plant in Warren County for two years but she had information he was not now employed there. She also testified as to communications with his parents, including a statement by his father that he would use his finances to see she did not get custody of the child.

Defendant's evidence consisted of testimony from the Sheriff serving the process, who testified he had no actual personal knowledge of the defendant or his usual place of abode; that there was a late-model car with Maryland license plates and an old Jeep and station wagon parked there; that he was unable to arouse anyone and so posted the notice; that the premises did not look abandoned to him, there appeared to be fresh tire tracks and the place appeared as though it was being lived in; that a license check of the Maryland car showed it was registered in the name of a Wilson but not in the name of the defendant.

The only other witness was the defendant's father, who testified that the complainant and the defendant

had lived at the property about two years that most of the furniture in the house belonged to the witness and his wife, that the station wagon mentioned was not operable and the Jeep was not licensed, that the Maryland car belonged to him and his wife; that on March 19th he was at the house but the defendant was not there and that he found a note on a table with the keys to the Maryland car; that nearly all of the defendant's and the child's clothing and toys were gone; that on investigation he had determined defendant had given up his previous employment; that he had been back to the house on more than one occasion since but the defendant was not there; that he had not seen the defendant and did not know his whereabouts but had been telephoned by him three times since March 19th.

On the other hand, this witness testified that a crib and bed belonging to the parties was still there, a child's desk and dresser belonging to the defendant was still there, together with some boxes of personal belongings, that a stereo of the defendant was there but the witness had moved it for safety, that the Jeep was in the defendant's name and the station wagon belonged to the complainant and defendant, having been given to them by the witness.

Section 8.01-326 abrogates the previous rule that the return of an officer is a verity, see Revisers' Note thereto. It provides no return, even a sheriff's, is "conclusive proof as to service of process"; and further that the return of a sheriff, instead of being a verity, amounts to "prima facie evidence of the facts therein stated." Though the conclusiveness of the sheriff's return as to process has been done away with, yet it retains important weight as *prima facie* evidence of the facts stated in it. Contrast this with the provision of the same section that a return by a qualified individual not a sheriff is merely "evidence of the facts stated therein."

Temporary absence from the usual place of abode at the time of service by posting will not invalidate the effectiveness of that service. *Spiegelman v. Birch*, 204 Va. 96 (1963), involving a two months' absence. Abandonment of a place of residence as one's usual place of abode, however, will make null any service of process which was by posting at that place subsequent to the

abandonment. *Earle v. McVeigh*, 91 U.S. 503 (1876). That case arose under Virginia statute permitting posting at the usual place of abode. In it service of process was declared void as well as judgments obtained on that process where the defendant had vacated the place of posting seven months prior thereto presumably because the area had fallen under the control of federal forces, and had sent his family and he himself having gone to territory controlled by the Confederacy with which cause he sympathized.

In the court's view, the fact of actual abandonment of a place of residence as one's usual place of abode would be sufficient to prevent future valid service of process by posting at that place, regardless of the motive for abandoning it as such. The actuality of the abandonment, not the motivation therefor controls.

In the West Virginia case of *Crouch v. Crouch*, 20 S.E.2d 169, 171 (1942), there is some intimation that to void a service of process by posting, the abandonment of a usual place of abode must be in good faith, but there is more positive authority to the contrary in Annotation, 32 A.L.R.3d 112. If the defendant left the residence with the intent of abandoning it as his usual place of abode and making some other residence his usual place of abode expressly for the purpose of frustrating or evading service of process, this cannot mean that his abandoned place of abode still remains his place of abode. To say so would be a contradiction in terms; and the terms of a constructive service of process statute must be complied with strictly. *Crockett v. Etter*, 105 Va. 679 (1906). Posting under § 8.01-296(2)(b) at a place which for whatever reason is no longer the usual place of abode would be a gross violation of the statute and elemental constitutional requirements for the due process concept of notice.

Thus, while the defendant does not have to show a "good faith" abandonment of the particular residence as his usual place of abode, it is necessary that he demonstrate an actual abandonment of it as such. Abandonment is a matter of intent. As no means has yet been devised to peer directly into the human mind whereby discovery of an intent there may be had, intent is often revealed by evidence of the intender's acts. His acts are not alone evidence of intent, however, for his testimony

may be significant, though likely in large part self-serving.

The acts of this defendant create conflicting inferences. For example, he took numerous items with him from the place but he also left behind a number of items of importance and value. The (hearsay) evidence of his discontinuing his regular employment on the surface is a very strong factor, but there is no evidence of the date of this action. There is no evidence of where the defendant may have gone, of where he may have set up a new residence or domicile or usual place of abode, there is no evidence of the actual date he left the marital domicile, there is no explanation for his leaving or how he may have received notice of this proceeding and other evidence on material factors, which only the defendant might know.

With the evidence introduced being very close and with a number of materially important items within the knowledge of the defendant not being in evidence, the court draws at least an inference, a negative adverse inference, from the defendant's failure to testify. While such an inference cannot be properly or constitutionally drawn from the failure of a defendant in a criminal case to testify, an inference may be drawn in civil cases from the fact that a part litigant does not testify. *Piccolo v. Woodford*, 184 Va. 432 (1945), terms the failure to be a presumption and states the matter thus:

> Another principle which applies here with considerable force under the circumstances appearing in this case, is that when a party to litigation is in possession of vitally material facts and fails to testify to them a presumption is indulged that if he had testified, his testimony would not have supported his theory of the case.

As the sheriff's return is *prima facie* evidence of the facts stated in his return and the burden of proof is on the defendant, viewing the evidence in the state it is, together with the failure of the defendant to testify as to material facts of the matter within his knowledge, the Court denies his motion to quash.