**William H. PRICE, Jr., Plaintiff,**

v.

**UNITED STATES of America and Guy L. Caterina, Defendant.**

**Civ. A. No. 2803.**

United States District Court
E. D. Virginia,
Norfolk Division.

Dec. 30, 1959.

---

**310**

Gordon E. Campbell, Norfolk, Va., for plaintiff.

John M. Hollis, U. S. Atty., W. Farley Powers, Jr., Asst. U. S. Atty., Norfolk, Va., for defendant.

WALTER E. HOFFMAN, District Judge.

In its memorandum of May 13, 1959, this Court made a tentative total award of $96,800 in favor of the plaintiff in his action instituted under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq., but reserved for further determination the question as to the propriety of crediting against the award the present value of disability benefits in the sum of $164 per month which the plaintiff has been receiving, and will continue to receive subject to certain conditions, during the balance of his life, in the form of an annuity. Additionally, certain survivorship benefits are reserved for the wife of plaintiff in the event plaintiff predeceases his said wife. The benefits paid and to be paid are pursuant to the pertinent provisions of the Civil Service Retirement Act of 1956, 70 Stat. 743, 5 U.S.C.A. § 2251 et seq.

In arriving at the total award payable to plaintiff under the Federal Tort Claims Act, the Court admittedly capitalized plaintiff's loss of earning capacity to the extent of $2,500 per year which, when computed on a basis of "earning" life expectancy discounted at 3½%, resulted in a total loss of earnings of $45,-000.

The United States contends that, as to the loss of earnings, the present value of the disability benefits should be offset against the total award, at least to the extent of the amount allocated for loss of earnings, by reason of the language in Brooks v. United States, 337 U.S. 49, 53, 54, 69 S.Ct. 918, 921, 93 L.Ed. 1200, wherein it is said:

> " * * * we now see no indication that Congress meant the United States to pay twice for the same injury. Certain, elements of tort damages may be the equivalent of elements taken into account in providing disability payments."

For the reasons herein stated, we do not agree with the theory advanced by the United States as applied to the facts of this case, although it is recognized that the point is not free from doubt.

The Government concedes that plaintiff, in his capacity as a crane operator at the Norfolk Naval Shipyard, contributed a total of $2,331.85 into the fund as of December 1, 1958. Plaintiff's contribution to the fund will be exhausted as of April, 1960, and, according to the Government, it is at that time that the offset should be made effective.

Under the Civil Service Retirement Act, when an employee has been so employed in excess of five years, as in the case of plaintiff, he is entitled to certain disability benefits in the form of an annuity as provided by 5 U.S.C.A. § 2259. In this case the amount was determined at forty per cent of plaintiff's average salary over the preceding five years of his service which aggregated $1,995.20. For a consideration of $22.20 per annum, plaintiff elected, pursuant to the rights granted him, to take survivorship benefits. If his wife survives him, the wife will receive $37 per month for the balance of her life. There remained the sum of $1,973 which, when divided by twelve rounded out to the nearest dollar, left $164 per month payable to plaintiff.

By way of mandatory deductions from his salary, plaintiff's base salary was reduced to the extent of 6% until October 1, 1956, which deduction was thereafter increased to 6½%. Participation under the Civil Service Retirement Act was compulsory upon plaintiff, although the plan may be voluntary as to certain specified federal employees under § 2252. The Government, since June 30, 1957, has contributed an equal percentage of plaintiff's wages to the fund from which the benefits are now being paid. Legislative history reveals that Congress was intent upon a plan which would provide maximum benefits consistent with sound actuarial and financial principles. Conference Report No. 2935, July 26, 1956, 2 U.S.Code, Cong. and Adm.News, 84th Cong., 2nd Session, 1956, pp. 3742–3744.

The percentage of wages thus respectively contributed by the plaintiff and the agency or department employing said plaintiff was deposited in the Treasury of the United States as a credit to the "fund" as provided by 5 U.S.C.A. § 2254 (a). Every employee is deemed to consent and agree to the deductions from his basic salary. The "fund" is defined by § 2251(f) to mean the "civil service retirement and disability fund created by the Act of May 22, 1920". The Secretary of the Treasury is commanded, by § 2267(c), to immediately invest that portion of the fund which is not immediately required for the payment of benefits, in interest bearing securities of the United States, and the income derived therefrom becomes a part of the "fund". In short, the "fund" is comprised of moneys (1) deducted from the employee, (2) paid by the employer agency or department, (3) gifts, (4) bequests, (5) additional voluntary deposits of the employee, (6) interest from investments, and (7) appropriations as necessary to maintain the "fund" on a normal cost plus interest basis.

Under 5 U.S.C.A. § 2257(c), plaintiff is subject to an annual physical examination to determine whether he has recovered from his disability. As plaintiff lost an arm it is, of course, conceded that he cannot recover. Nevertheless, as provided by 5 U.S.C.A. § 2257(d), if plaintiff, before reaching age sixty, "is restored to an earning capacity fairly comparable to the current rate of compensation of the position occupied at the time of retirement, payment of the annuity shall cease". It is not essential that plaintiff be reemployed by the Government. Earning capacity is deemed restored if, in two succeeding calendar years, the plaintiff's income from wages or self-employment, or both, shall equal 80% of the current rate of compensation of the position occupied immediately prior to retirement. Upon such cessation of annuity payments, plaintiff would be entitled, at age 62 but not before, to receive "deferred annuity" payments on the normal retirement basis of $73 per month.

There is no statutory authority for the allowance of setoff here sought by the Government. This is, of course, a matter of Congressional determination. If any setoff is permitted, it must be under the authority of United States v. Brooks, 4 Cir., 176 F.2d 482, 484, following the suggestion of the United States Supreme Court on remand of the same case, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200.

It should be noted at the outset that Brooks relates only to certain veteran's benefits which are, without exception, deemed to be gratuities which the Government may withdraw or modify at will as the recipient has no property or vested right in such benefits. Walton v. Cotton, 19 How. 355, 60 U.S. 355, 15 L. Ed. 658; United States ex rel. Burnett v. Teller, 107 U.S. 64, 68, 2 S.Ct. 39, 27 L.Ed. 352; Frisbie v. United States, 157 U.S. 160, 166, 15 S.Ct. 586, 39 L.Ed. 657; United States v. Cook, 257 U.S. 523, 42 S.Ct. 200, 66 L.Ed. 350; Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434. While there is some division of opinion on the subject, Civil Service Retirement annuities are not generally classified as gratuities. Dismuke v. United States, 297 U.S. 167, 56 S.Ct. 400, 80 L.Ed. 561; Miller v. Commissioner of Internal Revenue, 4 Cir.,

**312**

144 F.2d 287; 32 Op.Atty.Gen. 552 (1921).[1]

In Dismuke v. United States, supra [297 U.S. 400, 56 S.Ct. 402], the plaintiff instituted an action in the District Court, under the Tucker Act, to recover an annuity claimed to be due him under the Civil Service Retirement Act. The Supreme Court held, *inter alia,* that the action was properly maintained under the Tucker Act since such annuities are not pensions, salaries, or claims from compensation within the meaning of the exclusionary provisions of the Tucker Act prohibiting suit on such claims. The Court stated that an annuity under the Civil Service Retirement Act was not a "pension" since that term is applicable "to the gratuities paid by the government in recognition of past services in the Army or Navy".

There is, however, authority to the contrary in the recent case of Steinberg v. United States, Ct.Cl., 163 F.Supp. 590, 591, wherein the majority opinion held that an annuity under the Civil Service Retirement Act was not based upon a contract and was "more in the nature of a gratuity granted in appreciation for long and faithful service".[2]

In Miller v. Commissioner of Internal Revenue, supra [144 F.2d 289], the Court of Appeals for the Fourth Circuit was called upon to determine whether the compulsory amounts deducted under the Civil Service Retirement Act constituted income to the taxpayer. In holding that such deductions were income, the Court quoted at length, with approval, from the opinion of the Tax Court (2 T.C. 267):

"These aspects of the retirement plan seem to us to demonstrate that there have been purchased by the employee substantial rights * *. They are * * * comparable to, and for our purposes indistinguishable from, an annuity contract, of which the employer constitutes itself the issuer, setting aside reserves for that purpose and making investments thereof comparable to those which would be employed by companies engaged in that business."[3]

These authorities compel us to hold that an annuity under the Civil Service Retirement Act is not a gratuity like veterans' benefits, and, therefore, the holding in Brooks v. United States, supra, is at least of dubious application to this case.[4]

The Steinberg case arising in the Court of Claims had for consideration the constitutionality of 5 U.S.C.A. § 740d which purported to deny annuities or retirement pay to any federal employee claiming the privilege of the Fifth Amendment. In holding the controverted section unconstitutional because it arbitrarily, unreasonably, and indiscriminately classified the innocent with the guilty, the Court was hopelessly divided on the subject of gratuities, contractual rights, and vested rights. Three members of the Court held that annuities under the Civil Service Retirement Act were neither contractual nor vested after retirement; one judge concluded that such annuities were both contractual and vested after retirement; the final member of the Court ruled that the annuity was solely a vested right after retirement.

The matter is further complicated by reason of the decision in Pennie v. Reis,

1. The Attorney General, in 1921, held that the compulsory deduction was valid consideration for the benefits receivable upon the occurrence of the statutory contingencies, and that the element of "consideration" differentiated the "annuity" from Army and Navy pensions, even though the annuity did "partake of the nature of a reward for faithful service."

2. Chief Judge Jones dissented in Steinberg and expressed the view that such an annuity was not a gratuity, but a contractual right.

3. The dictum in Gibney v. United States, D.C., 146 F.Supp. 135, and Anderson v. United States, 9 Cir., 205 F.2d 326, 328, 40 A.L.R.2d 639, leads to a contrary view.

4. In Avant v. United States, D.C., 165 F.Supp. 802, 805–806, this Court indicated the contractual nature of benefits derived under the Civil Service Retirement Act.

132 U.S. 464, 10 S.Ct. 149, 151, 33 L.Ed. 426, wherein a California statute of 1878, St. 1877–78, p. 879 provided that San Francisco police should receive $102 per month, subject to a withholding of $2 per month by the treasurer to be deposited into a "police life and health insurance fund". The statute provided that $1,000 was payable out of the fund upon the death of any policeman. In 1889, St. 1889, p. 56, the statute of 1878 was repealed, a new plan was prepared, and the accumulated funds were transferred into a new fund which was to be supported by many additional sources, including fines, etc. The fund, although reconstituted for the same general purpose, had completely new distribution provisions. Plaintiff's decedent, a policeman since 1869, died nine days after the repeal of the 1878 statute, and plaintiff brought suit to recover the death benefit as the fund accumulated under the former statute was more than sufficient to pay the claim. The Supreme Court of California denied plaintiff's claim and the United States Supreme Court affirmed by stating that neither the policeman, nor his personal representative, had any property in the fund and, therefore, there was no taking by the state in violation of the Fourteenth Amendment.

The conclusion in Pennie was grounded upon the fact that the Act of 1878 showed that "no money was contributed by the police officer out of his salary", and that "the statute, in legal effect, says that the police officer shall receive as compensation, each month, not exceeding $100 * * * and that in addition thereto the state will create a fund by appropriating $2 each month for that purpose * * *." The clear inference from the language in Pennie is that if the legal effect of the statute was to pay compensation to the policeman at the rate of $102 per month, incidents of ownership would be vested, and, likewise, if death had occurred prior to the effective date of the repeal of the Act of 1878, plaintiff would have prevailed.

There is, however, dictum supporting the view that deductions under the Civil Service Retirement Act are never in fact paid or made subject to the disposition of the employees, but are retained by the Government as general public funds in which the employees can have no right. Anderson v. United States, 9 Cir., 205 F.2d 326, 328; MacLeod v. Fernandez, 1 Cir., 101 F.2d 20, certiorari denied sub. nom. Toste v. MacLeod, 308 U.S. 561, 60 S.Ct. 72, 84 L.Ed. 471. The language in Anderson is pure dictum and the Court then proceeded to hold that the right to the annuity constituted property once the claim for same had accrued. MacLeod presented the question as to the constitutionality of an act of the Insular Government of Puerto Rico reducing the monthly "pension" benefits of parties then receiving same, and the First Circuit held that the pensioner had no vested right in the monthly payments due in the future, although suggesting that a pensioner has a vested right in any particular payment already due. There is some intimation in MacLeod that the right is vested "so long only as the statute in question remains in force and unchanged, subject to be divested at any time that Congress may desire". [101 F.2d 24.]

Whatever may be the law in other circuits, we do not believe that the Supreme Court has expressed any clear view on the subject of vested rights as regards "annuities" payable under the Civil Service Retirement Act. In the absence of any controlling decision we turn to Miller v. Commissioner of Internal Revenue, supra, from this circuit, wherein it is said:

"There is no merit in the contention of the petitioners that in 1940, the employee had no vested rights under the Civil Service Retirement Act. In that year he had the right to receive an annuity upon retirement, and to receive a return of the amount withheld from his salary, with interest, upon separation from the service, or death. These rights were secured in consideration of contributions made from his salary, and at least to the extent of such con-

tributions made, they could not be taken from him under the provisions of the Act, and we may not assume that Congress, if it could, would change the law so as to deprive him of the substantial rights acquired thereunder."

Irrespective of any holding as to vested or contractual rights, we think it obvious that disability benefits paid in the form of an "annuity" under the Civil Service Retirement Act are in no sense a "gratuity". When the Brooks case came before the Fourth Circuit on remand, the Government contended that the award was subject to deduction for government life insurance, and the Court said [176 F.2d 485]:

"It seems perfectly clear that there should have been no deduction on account of the life insurance. This was insurance bought and paid for by deceased; and the government was no more entitled to deduct the amount which it paid as insurer from its liability for wrongful death than if the insurance had been paid by a private insurer. No one would contend that an insurance company liable for wrongful death could deduct from such liability the amount paid by it on a life insurance policy which it had issued on the life of the deceased; and the government, as to its liability for wrongful death, occupies no better position because it is also an insurer."

Manifestly, the principle in Brooks is restricted to "gratuity" payments; a principle which does not reach a funded plan for annuity benefits as prescribed in the Civil Services Retirement Act. It differs from an outright pension where the pensioner contributes nothing such as in Dodge v. Board of Education, 302 U.S. 74, 58 S.Ct. 98, 82 L.Ed. 57. Moreover, the matter of permitting an offset as to such benefits not deemed to be gratuities is one for Congressional determination. An amendment to the Federal Tort Claims Act would declare the intent of Congress. If it be the desire of Congress to offset any award under the Tort Claims Act by amounts paid under the Civil Service Retirement Act, Social Security Act, 42 U.S.C.A. § 301 et seq. or other statutes enacted for the benefit of federal employees, it is a relatively simple matter to amend the statute. To grant this offset as insisted by defendant would be tantamount to legislation by judicial fiat. Plaintiff's right to the benefits under the Civil Service Retirement Act has been determined well in advance of the hearing under the Federal Tort Claims Act.

While it is perhaps unnecessary to extend the discussion, it should be noted that this circuit has held that benefits from a collateral source should not be considered in mitigation of damages. Rayfield v. Lawrence, 4 Cir., 253 F.2d 209, 213. The situation is not unlike the line of authorities holding that railroads are not entitled to mitigate, by way of offset, damages awarded to an employee under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to the extent of the contribution of the carrier toward the retirement fund established under the Railroad Retirement Act, 45 U.S.C.A. § 228a et seq. McCarthy v. Palmer, D.C., 29 F.Supp. 585, affirmed, 2 Cir., 113 F.2d 721, certiorari denied 311 U.S. 680, 61 S.Ct. 50, 85 L.Ed. 438; Hetrick v. Reading Co., D.C., 39 F.Supp. 22, 25; Chicago Great Western Ry. Co. v. Peeler, 8 Cir., 140 F.2d 865; New York, New Haven & Hartford R. R. v. Leary, 1 Cir., 204 F.2d 461, 468, certiorari denied 346 U.S. 856, 74 S.Ct. 71, 98 L.Ed. 370. The Civil Service Retirement Act, like the Railroad Retirement Act counterpart, is designed, with respect to its disability provisions "to protect against the risk of permanent loss of earnings through disability * * *."[5] Congress, under the Civil Service Retirement Act, has seen fit to provide for a cessation of disability benefits upon certain conditions dependent upon the earn-

5. Senate Doc. 89, 83rd Cong., 2nd Sess., Part V, p. 92, Report of Special Committee on Retirement Policy for Federal Personnel.

ings of the party receiving such benefits. To require an advance credit by way of offset upon a judgment under the Federal Tort Claims Act would do violence to the social and economic security of all federal employees similarly situated.

Judgment will be entered for the plaintiff against the defendant in the sum of $96,800 in accordance with the memorandum of May 13, 1959. By reason of the additional services required of counsel for plaintiff in this court, the attorney's fees will be increased to $7,500, with the same provision as heretofore noted in the prior memorandum for an additional allowance in the event of appeal.