Frances T. KARSTEN

v.

**KAISER FOUNDATION HEALTH PLAN OF the MID–ATLANTIC STATES, INC.**

Civ. A. No. 92–554–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 21, 1992.

Stephen M. Garver, Cheryl G. Rice, Reston, VA, for plaintiff.

R. Harrison Pledger, Jr., McLean, VA, for defendant.

## MEMORANDUM OPINION

CACHERIS, Chief Judge.

At issue is whether under Virginia law the collateral source rule [1] allows a plaintiff

1. The "collateral source rule" is the nomenclature given to the common law rule applied by the courts so that benefits received by the plaintiff from a source collateral to the wrongdoer

to recover compensatory damages for medical bills previously satisfied by her health maintenance organization ("HMO"), whom she has successfully sued for medical malpractice. For reasons discussed herein, this Court finds that the collateral source rule applies so that plaintiff may receive compensatory damages for medical bills already paid according to her HMO contract, where that same HMO is also liable as the tortfeasor.[2]

Plaintiff, Frances T. Karsten ("Karsten"), sued her HMO, Kaiser Foundation Health Plan of the Mid–Atlantic States, Inc. ("Kaiser") for malpractice, alleging that their negligent care and treatment caused her to deliver a premature stillborn fetus on April 2, 1990. Although Kaiser denied any malpractice, on November 12, 1992 a jury awarded Karsten $210,000.00.

Karsten is a member and subscriber to Kaiser's Health Maintenance Plan. She personally paid a portion of the premium for the plan with a deduction that was taken regularly from her paycheck. At trial she introduced exhibits three through seven, which are hospital bills incurred as a result of the incident in question. These bills were paid by Kaiser prior to trial. Kaiser agrees that it was required to pay these medical bills regardless of fault, based upon its contractual obligation to the plaintiff as a plan subscriber. Kaiser objected to the bills as part of the plaintiff's compensatory damages, arguing that Karsten should have been barred from presenting the bills to the jury because Kaiser already had paid them.

This case falls within the Court's jurisdiction based upon diversity of citizenship, and accordingly, the Court must apply the substantive law of Virginia, which includes Virginia's articulation of the collateral source rule. *See Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *United States v. Price*, 288 F.2d 448, 449–50 (4th Cir.1961). Before this Court can determine whether the collateral source rule applies, it must first decide what statement of the collateral source rule the Virginia Supreme Court would apply to the proffered medical bills. The choice lies between a statutory statement of the rule verses the common law distillation of the rule as stated by the Virginia high court.

▪ Plaintiff first points to a statute that she claims is the Virginia legislature's general codification of the collateral source rule:

In any suit brought for personal injury or death, provable damages for loss of income due to such injury or death shall not be diminished because of reimbursement of income to the plaintiff or decedent from any other source, nor shall the fact of any such reimbursement be admitted into evidence.

---

will not diminish the damages otherwise recoverable from the wrongdoer. *See* 22 Am.Jur.2d *Damages* §§ 566–90 (1988) (discussing the various applications of the collateral source rule and citing cases).

Although the collateral source rule has been extant in this country for over a century, in more recent years the commentators have criticized it. *See, e.g.*, Kenneth S. Abraham, What is a Tort Claim? An Interpretation of Contemporary Tort Reform, 51 Md.L.Rev. 172 (1992); John G. Fleming, The Collateral Source Rule and Loss Allocation in Tort Law, 54 Cal.L.Rev. 1478 (1966); Fleming James, Social Insurance and Tort Liability: The Problem of Alternative Remedies, 27 N.Y.U.L.Rev. 537 (1952); Jeffrey O'Connell, A Proposal to Abolish Contributory and Comparative Fault, with Compensatory Savings by Also Abolishing the Collateral Source Rule, 1979 U.Ill.L.F. 591; William Schwartz, The Collateral Source Rule, 41 B.U.L.Rev. 348

(1961); West, The Collateral Source Rule Sans Subrogation: A Plaintiff's Windfall, 16 Okla. L.Rev. 395 (1963); Note, Unreason in the Law of Damages: The Collateral Source Rule, 77 Harv.L.Rev. 741 (1964).

2. As an alternative finding, this Court holds that Defendant's objection to the medical bills is barred because of failure to comply with the Scheduling Order. The Scheduling Order, which both counsel received, clearly states that "[o]bjections to exhibits must be noted ... at the [pretrial] conference; otherwise the exhibits shall stand admitted into evidence." The pretrial conference in this matter was held on August 20, 1992, and was attended by counsel for both sides. Counsel for the defense admits that he failed to raise any objections to the exhibits now at issue. Even if the Court were inclined to agree with counsel on the substantive issue, the exhibits would alternatively be admitted because the objections are untimely.

Va.Code Ann. § 8.01–35 (Michie 1992). Yet this statute on its face states that it applies only to "damages for *loss of income.*" The word "income" is defined as "a gain or recurrent benefit usu[ally] measured in money that derives from capital or labor." Webster's Ninth New Collegiate Dictionary 610 (9th ed. 1986). Medical bills can in no way be construed to fall within this meaning of the word "income." Thus, the statute is interpreted to apply to situations where there truly was a "loss of income"; namely, where the plaintiff has lost the ability to earn wages or benefits through the application of labor or capital. This interpretation is in keeping with Virginia cases construing the phrase "loss of income" as a part of compensatory damages separate and distinct from losses incurred due to "medical bills or expenses." *See, e.g., Davoudlarian v. Krombein,* 244 Va. 88, 418 S.E.2d 868, 870 (1992); *Johnson v. Smith,* 241 Va. 396, 403 S.E.2d 685 (1991); *Bulala v. Boyd,* 239 Va. 218, 389 S.E.2d 670 (1990).

It is also noted that in other statutes dealing with damages, the Virginia legislature itself distinguishes between loss of income and losses incurred for medical bills or expenses. *See, e.g.,* Va.Code Ann. § 8.01–52 (Michie 1992). Thus, this Court finds that section 8.01–35 is limited by its own terms to damages for "loss of income," and that the Virginia Supreme Court and the Virginia legislature view this as separate and distinct from losses incurred because of medical expenses. Therefore, section 8.01–35 does not apply where the plaintiff seeks to introduce medical bills.

Although the Court finds section 8.01–35 inapplicable to this situation, this does not answer the question of whether the common law collateral source rule as applied generally by the Virginia courts would allow the plaintiff to present the medical bills as evidence of damages. Thus, the Court turns next to an examination of the collateral source rule as applied in the Virginia courts.

The Virginia Supreme Court has discussed the collateral source rule in several cases. *See Schickling v. Aspinall,* 235 Va. 472, 369 S.E.2d 172, 174 (1988); *Walthew v. Davis,* 201 Va. 557, 111 S.E.2d 784, 787–88 (1960); *Burks v. Webb,* 199 Va. 296, 99 S.E.2d 629, 636 (1957); *Johnson v. Kellam,* 162 Va. 757, 175 S.E. 634, 636–37 (1934); *Owen v. Dixon,* 162 Va. 601, 175 S.E. 41, 43 (1934); *Baltimore & Ohio R.R. v. Wightman's Adm'r,* 70 Va. 431, 445–46 (1877), *rev'd on other grounds sub nom. Railroad Co. v. Koontz,* 104 U.S. 5, 26 L.Ed. 643 (1881).

In applying the collateral source rule, the Virginia Supreme Court has stated:

[t]he reason for this rule is that the defendant, who by his negligence has injured another, owes to such other compensation for the injuries he has inflicted, and the payment for those injuries from a collateral source cannot relieve the defendant of his obligation.

. . . . .

"There can be no abatement of damages on the principle of partial compensation received for the injury, where it comes from a collateral source, wholly independent of the defendant, and is as to him *res inter alios acta.*"

. . . . .

The payment of such moneys not being procured by the defendant, and they not having been either paid or received to satisfy in whole or in part his liability, he can derive no advantage therefrom in mitigation of damages for which he is liable.

*Johnson,* 175 S.E. at 636–37 (quoting *Regan v. New York & New England R. Co.,* 60 Conn. 124, 22 A. 503, 505 (1891)). The other Virginia cases dealing with the collateral source rule have continued to echo this reasoning. *See Schickling,* 369 S.E.2d at 174; *Walthew,* 111 S.E.2d at 787–88; *Burks,* 99 S.E.2d at 636; *Owen,* 175 S.E. at 43. The rub here is that both sides can point to different portions of the above quoted language in support of their conflicting positions. The reality is that the Virginia Supreme Court has not yet considered whether the collateral source rule applies where the insurer and tortfeasor are the same.

Defendant's argument as to why the medical bills should be excluded stems from a facile fixation on the shorthand nomenclature—"collateral source rule"—attached to the proposition rather than discussing the reasoning that led to the common law's development of the rule. Defendant's logic proceeds thus: 1) the "collateral source rule" would apply where medical bills were paid by a source collateral to, or other than, Kaiser; 2) Kaiser paid these bills; 3) Kaiser is not collateral; 4) the rule does not apply. This sort of reasoning is not without support in some of the case law of other jurisdictions.[3] *See, e.g., Olivas v. United States*, 506 F.2d 1158, 1163 (9th Cir.1974) (the collateral source "rule is inapplicable when the defendant is the source of compensation to the plaintiff"); *Gorham v. Farmington Motor Inn, Inc.*, 159 Conn. 576, 271 A.2d 94 (1970). The Virginia courts, however, have not addressed the collateral source rule under these facts, and it is the job of this Court to predict what the Virginia Supreme Court would do if presented with this question.

■ In the view of this Court, the focus under Virginia law should not be simply on the word "collateral," so that the only relevant issue is whether the defendant is being asked to make both payments. This ignores the reasoning behind the rule. The collateral source rule is concerned with making sure that the defendant as wrongdoer compensates the plaintiff for the wrong committed. Balanced against this is a concern that the plaintiff should only be compensated by the tortfeasor once for the

injury received. But over-emphasizing the word "collateral" ignores the reality that it is possible for a defendant to simultaneously wear two hats. The necessity for multiple payments arises not because the defendant is being doubly-penalized, but because the defendant-tortfeasor and defendant-insurer owe the plaintiff multiple legal obligations.

This is not the first time that a federal court in this circuit has sanctioned this reasoning when construing Virginia's collateral source rule. The United States Court of Appeals for the Fourth Circuit examined the collateral source rule under Virginia law in *United States v. Price*, 288 F.2d 448 (4th Cir.1961), and anticipated exactly this type of debate. There the court observed the following:

> Although when the compensation comes from someone other than the defendant, courts are more prone to call it "collateral," and some may always consider it such, without examining closely the nature of the benefit, the fact that it comes from the defendant tortfeasor does not itself preclude the possibility that it is from a collateral source. The plaintiff may receive benefits from the defendant himself which, because of their nature, are not considered double compensation for the same injury but deemed collateral.

*Id.* at 450; *accord Overton v. United States*, 619 F.2d 1299, 1307 (8th Cir.1980) (where the insurer is also the tortfeasor, the policy issued by the company is the

---

**3.** In addition to the cases cited in the body of the opinion, the defendant refers the Court to several cases decided under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51 *et seq.* (1988), in which the collateral source rule was held not to apply where plaintiffs sought to exclude evidence of medical payments made pursuant to a group health insurance policy obtained by the defendant-employer. *See, e.g. Wagner v. Reading Co.*, 428 F.2d 289 (3rd Cir. 1970); *Ford v. National R.R. Passenger Corp.*, 734 F.Supp. 215 (D.Md.1990); *Fogg v. National R.R. Passenger Corp.*, 585 A.2d 786 (D.C.1991). As was appropriately noted by the *Fogg* court, FELA cases do not deal with the collateral source rule as developed under the common law, but rather with the statute itself. *Fogg*, 585 A.2d at 791. FELA expressly provides

> [t]hat in any action brought against any such common carrier under … this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought.

45 U.S.C. § 55 (1988). Therefore, these FELA cases are not particularly helpful to this Court, which sits to decide whether the collateral source rule applies in this case under the common law of Virginia, as described by the Commonwealth's highest court.

collateral source); *Haughton v. Blackships, Inc.*, 462 F.2d 788, 790 (5th Cir.1972) ("the source of the funds may be determined to be collateral or independent, even though the [tortfeasor] supplies such funds.... Application of the collateral source rule depends less upon the source of funds than upon the character of the benefits received.").

█ Thus, in the view of the Fourth Circuit, Virginia law does not exclude application of the collateral source rule simply because the defendant made the payments. Rather than myopically focusing on whether the source is "collateral" in terms of the physical identity of the payment's source, the proper inquiry is upon the nature of the benefit itself. The proper inquiry recognizes that even if the defendant is the source of payment, the nature of the payments may be such that the plaintiff is not receiving double compensation from the same defendant for the same injury.

█ Once the focus is shifted from simply identifying the payment's physical source to examining the nature of the payment, or reason each payment is being made, it becomes clear that the collateral source rule applies to this case. In the case at hand, it is true that Kaiser is in essence being asked to pay twice for the same injuries to the plaintiff. But the Fourth Circuit's analysis of Virginia law says that this Court must focus on the nature of each payment Kaiser is being asked to make. In other words, the Court must determine for what reason, or in what capacity, the Defendant is being asked to remit each payment.

█ The first payment of medical bills by the defendant was in its capacity as plaintiff's insurer, pursuant to the insurance agreement entered into between the plaintiff and defendant, for which the plaintiff personally contributed valuable consideration by way of a deduction taken out of each of her paychecks. The defendant admits that it was obligated under the contract to pay for the now challenged medical bills. The defendant is now being asked to pay these same medical expenses as compensatory damages. Even though the same defendant is being asked to pay the same damages twice, it is patent that the nature of the two payments is different. The nature of the first is as a payment from defendant as insurer to the plaintiff as the insured.[4] The nature of the second

---

**4.** It has long been the common law rule that a plaintiff's damages are not reduced on account of payments made for treatment under hospitalization or medical insurance plan, if the plaintiff, a member of her family, or even her employer, paid the premiums and the tortfeasor did not. See *The Atlas*, 93 U.S. 302, 310–11, 23 L.Ed. 863 (1876) ("a wrong-doer ... cannot claim the benefit of the contract of insurance if effected by the person ... he has injured"); *Smith v. United States*, 587 F.2d 1013, 1015 (3rd Cir.1978) (under Pennsylvania law "one can justify a double recovery where the original source was supplied by the plaintiff, himself, out of resources that would otherwise have been available to him for other purposes"); *Grayson v. Williams*, 256 F.2d 61, 65–66 (10th Cir.1958) (plaintiff was entitled to payment by tortfeasor for medical expenses already covered by plaintiff's employee hospital association where plaintiff had contributed regularly to the association during employment); *Rayfield v. Lawrence*, 253 F.2d 209, 212–14 (4th Cir.1958) (applying Virginia law); *Jeffords v. Florence County*, 165 S.C. 15, 162 S.E. 574, 576 (S.C.1932) ("no reduction could be made on the ground that [plaintiff] had recovered from the insurers.... [T]o allow such diminution would be to permit the wrong-doer to pay nothing, and take all the benefit of a

policy of insurance without paying the premium."); *Hammond v. Schiff*, 100 N.C. 161, 6 S.E. 753, 761 (1888); 22 Am.Jur.2d *Damages* § 587 (1988) (citing cases).

Even in jurisdictions where the collateral source rule has been abrogated in whole or in part by legislative decree, see Joseph Sanders & Craig Joyce, "Off to the Races": The 1980s Tort Crisis and the Law Reform Process, 27 Hous. L.Rev. 207, 220–22 (1990) (cataloguing state legislative responses), many states nevertheless have recognized that the plaintiff still has some degree of claim to payments from an insurance policy paid for by the plaintiff. See, e.g., Alaska Stat. § 23.25.030(c) (1992); Cal.Civ.Code § 3333.1(a) (Deering 1992); Colo.Rev.Stat. § 13–21–111.6 (1992); Conn.Gen.Stat. § 52–225a(c) (1990); Me.Rev.Stat.Ann. tit. 24, § 2906(4) (West 1991); Ohio Rev.Code Ann. § 2305.27 (Baldwin 1992). Some states merely provide that plaintiff's claim should be reduced by payments received from a collateral source, but that the plaintiff should in turn be compensated for any payments made by plaintiff to secure rights under the contract with the collateral source. See, e.g., Fla.Stat. ch. 768.76(1) (1991); Mass.Ann.Laws ch. 231, § 60G (Law.Co-op.1992); Mich.Comp.Laws § 600.6303 (1991); N.Y.Civ.Prac.L. & R. 4545 (Consol.1992).

is as a payment from defendant as tortfeasor to the plaintiff as the party injured by the defendant's negligence. It is axiomatic that the plaintiff is entitled to receive the benefit of her bargain under the insurance contract, irrespective of the fact that the carrier servicing that contract may also be the tortfeasor. In addition to the Fourth Circuit's holding in *Price*, this holding receives support from other courts who have considered application of the collateral source rule where the insurer is also the tortfeasor.[5]

When viewed in this manner, it is obvious that the collateral source rule, and the principle behind that rule, applies here. The plaintiff is not receiving a windfall at the defendant's expense. On the one hand, she is receiving the benefit of her bargain with the defendant as insurer, and on the other she is receiving compensation for her injuries. Likewise, the defendant is not being twice penalized for the wrong it committed; as tortfeasor the defendant is being asked to compensate the plaintiff only once. To set off payments owed by the defendant as insurer against compensation owed by the defendant as tortfeasor allows the defendant to reap a windfall by allowing it to avoid its contractual obligations to the plaintiff.

Accordingly, plaintiff's exhibits three through seven were properly admitted into evidence for consideration by the jury, and have been rightfully included as part of plaintiff's compensatory damages.

---

**5.** *Overton v. United States,* 619 F.2d 1299, 1307 (8th Cir.1980) (under Missouri law "if plaintiff happens to be wronged by the same insurance company that has insured against plaintiff's loss ... the plaintiff is entitled to a 'double recovery' even though the liable party (the insurance company) and the collateral source (the policy issued by the company) cannot be said to be wholly separate"); *District of Columbia v. Jackson,* 451 A.2d 867, 871 (D.C.1982) ("A source of benefits also will be deemed collateral, however—and the victim will be entitled to both the benefit and the judgment—even when the tortfeasor has provided or contributed to those benefits, so long as the victim has contracted for the benefits").