Diane V. MURPHY, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 2:92cv1309.

United States District Court,
E.D. Virginia,
Norfolk Division.

Nov. 24, 1993.

Malcolm Bernard Higgins, II, Virginia Beach, VA and Linda S. Laibstain, Hofheimer, Nusbaum, McPhaul & Samuels, Norfolk, VA, for plaintiff.

Anita K. Henry, Asst. U.S. Atty., U.S. Attorney's Office, Norfolk, VA, for defendant.

## SUPPLEMENTARY OPINION AND ORDER

MORGAN, District Judge.

### I. Procedural History

On October 6, 1993, this Court entered judgment in favor of the Plaintiff, Diane V. Murphy, against the United States in the amount of Three Million Five Hundred Thousand Eight Hundred One and 42/100 Dollars ($3,500,801.42), 833 F.Supp. 1199. Included in this verdict was an award to the Plaintiff for medical expenses incurred in the treatment which she received as a result of the injuries suffered in the collision which was the subject of this proceeding. The Court allowed the Plaintiff the full amount of her medical expenses, although the sum of Twenty–Eight Thousand Five Hundred Seventy–Eight and 34/100 Dollars ($28,578.34) had been paid in the Plaintiff's behalf by the United States Government, pursuant to medical benefits to which the Plaintiff was entitled by virtue of her spouse's active-duty service with the United States Navy.

Medical benefits to active duty personnel, as well as their spouses and dependents, may be furnished by two general methods: the first method is through care furnished at naval or other government-operated medical facilities. The second method is in the form of reimbursement to civilian health care providers furnishing medical care to active duty personnel, their spouses, and dependents. When benefits are received through the latter method, they are classified as CHAMPUS benefits.[1]

---

1. Civilian Health and Medical Program of the Uniformed Service (CHAMPUS). 10 U.S.C. § 1079.

The Twenty–Eight Thousand Five Hundred Seventy–Eight and 34/100 Dollars paid to health care providers in behalf of the Plaintiff in this case was paid pursuant to the CHAMPUS program. The United States is asserting that it is entitled to a lien or off-set, in the foregoing amount, against the judgment which it is obligated to pay the Plaintiff's legal representative in the subject case.

A hearing was conducted upon the United States' Motion for Off-Set on November 15, 1993. At this hearing, evidence was presented in behalf of the United States through Mrs. Judy F. Carroll, a health-care analyst experienced and knowledgeable in the area of CHAMPUS benefits. Mrs. Carroll testified that the Plaintiff's eligibility for CHAMPUS benefits was entirely independent of the judgment which was awarded in this case and that Mrs. Murphy would remain eligible for CHAMPUS benefits so long as her spouse remained on active duty with the United States Navy or served a sufficient number of years to be eligible for retirement benefits. Mrs. Carroll further testified that no effort would be made by the United States to off-set any future CHAMPUS benefits against the judgment. Lastly, she testified that active duty personnel do not make any direct payment for CHAMPUS benefits, nor is any set amount of their pay and allowances allocated to a specific fund in order to cover the costs of such benefits; rather, the costs of such benefits are paid out of the general funds of the United States Treasury. Thus, the eligibility of active duty personnel, their spouses, and dependents for CHAMPUS benefits is earned not by direct financial contribution, but by service on active duty or, in the case or retired personnel, by the earning of retirement status in the same manner as retirement pay is earned.

## II.  Legal Analysis

The United States does not rely upon or cite any statute granting it a lien against the judgment awarded to the Plaintiff; instead, the Government claims that it is entitled to this off-set based upon case law. While the United States Court of Appeals for the Fourth Circuit has not passed upon the particular issue presently before this Court, the

Fourth Circuit in *Price v. United States,* 179 F.Supp. 309 (E.D.Va.1959), *aff'd,* 288 F.2d 448 (4th Cir.1961), did decide a similar issue. The United States District Court for the Eastern District of Virginia addressed the issue at bar in the case of *Diaz v. United States,* 655 F.Supp. 411 (E.D.Va.1987), and an analogous issue in *Karsten v. Kaiser Foundation Health Plan,* 808 F.Supp. 1253 (E.D.Va.1992).

It is well established that in suits brought under the Federal Tort Claims Act, federal courts are required to apply "the whole law of the State where the act or omission occurred." *Richards v. United States,* 369 U.S. 1, 11, 82 S.Ct. 585, 592, 7 L.Ed.2d 492 (1962); *see also Stancil v. United States,* 200 F.Supp. 36, 43 (E.D.Va.1961). In this context, Virginia law has long held that compensation from a collateral source should be disregarded in assessing tort damages. *See Karsten,* 808 F.Supp. at 1254–1256; *Schickling v. Aspinall,* 235 Va. 472, 369 S.E.2d 172, 174 (1988); *Walthew v. Davis,* 201 Va. 557, 111 S.E.2d 784, 787–788 (1960); *Burks v. Webb,* 199 Va. 296, 99 S.E.2d 629, 636 (1957); *Johnson v. Kellam,* 162 Va. 757, 175 S.E. 634, 636–637 (1934). Explaining the collateral source rule, the Virginia Supreme Court recently opined:

The collateral source rule is designed to strike a balance between two competing principles of tort law: (1) a plaintiff is entitled to compensation sufficient to make him whole, but no more; and (2) a defendant is liable for all damages that proximately result from his wrong. A plaintiff who receives a double recovery for a single tort enjoys a windfall; a defendant who escapes, in whole or in part, liability for his wrong enjoys a windfall. Because the law must sanction one windfall and deny the other, it favors the victim of the wrong rather than the wrongdoer.

*Schickling,* 235 Va. 472, 369 S.E.2d at 174.

In light of this case law, the issue now confronting the Court turns upon whether payment of medical benefits to the Plaintiff pursuant to the CHAMPUS program is collateral to the payment of the judgment by the United States as a tortfeasor. The United States argues, admittedly with some au-

352

thority in support of its position,[2] that CHAMPUS benefits are not a collateral source since both CHAMPUS benefits and the tort judgment are paid from the general revenues of the United States. On the other hand, in *United States v. Price* and in *Karsten v. Kaiser Foundation Health Plan*, courts have recognized that the nature of the benefit may be such that the benefits should be considered collateral, as opposed to double compensation, even though the same defendant may be the payor of both sums:

> Although when compensation comes from someone other than the defendant, courts are more prone to call it "collateral," and some may always consider it such, without examining closely the nature of the benefit, the fact that it comes from the defendant tortfeasor does not itself preclude the possibility that it is from a collateral source. The plaintiff may receive benefits from the defendant himself which, because of their nature, are not considered double compensation for the same injury but deemed collateral.

*Price*, 288 F.2d at 450 (cited with approval in *Karsten*, 808 F.Supp. at 1256); *see also Mooney v. United States*, 619 F.Supp. 1525 (D.N.H.1985) (tort judgment against the United States not reduced by amount of medical costs already paid by CHAMPUS).

This Court is persuaded by the reasoning in *Price*, *Karsten*, and *Mooney* and, therefore, finds that in deciding this issue it should place its primary reliance upon the nature of the benefit, as opposed to the source of the payment. The *Price* Court determined that benefits received by Price from the Civil Service Retirement Act were a collateral source and therefore such payments should not be off-set against the tort judgment. 288 F.2d at 450–451. The Fourth Circuit pointed out here that participation in the retirement program was compulsory for most civilian employees of the United States, a situation which is analogous to that of the Plaintiff. *Id.* In the instant case, Lt. Murphy has no option as to whether he will participate in the medical benefits program or the retirement

program offered by the United States Navy; on the contrary, he is compelled to do so. Lt. Murphy cannot call upon the Navy to increase his salary with the proviso that he will fund his own retirement or family medical protection, but instead he receives such benefits as part of his pay. Accordingly, this Court FINDS that Lt. Murphy has earned his medical benefits, his retirement benefits, and the other fringe benefits attendant to naval service just as surely as if he had paid periodic premiums to a private insurer or retirement system.

While there may other factors present which could distinguish the Murphy's situation from that in *Price*, the rationale is the same. In *Price*, the injured party had made cash contributions to a retirement fund which was maintained as a separate account. This fund consisted of contributions from both the employees as well as from the United States as the employer. In the view of this Court, however, Lt. Murphy's active duty naval service merits the same consideration as the cash contribution of a civilian employee of the United States Government. The fact that the Government elects not to maintain a separate fund from which CHAMPUS benefits are distributed should in no way diminish the integrity of the medical benefits earned by Lt. Murphy.

Relying upon *Price*, the United States District Court for the Eastern District of Virginia emphasized in *Karsten* that:

> The first payment of medical bills by the defendant was in its capacity as plaintiff's insurer, pursuant to the insurance agreement entered into between the plaintiff and defendant, for which the plaintiff personally contributed valuable consideration by way of a deduction taken out of her paychecks. The defendant admits that it was obligated under the contract to pay for the now challenged medical bills. The defendant is now being asked to pay these same medical expenses as compensatory damages. Even though the same defendant is being asked to pay the same damages twice, it is patent that the nature of

**2.** *Diaz v. United States*, 655 F.Supp. 411 (E.D.Va. 1987); *Mays v. United States*, 806 F.2d 976 (10th Cir.1986).

the two payments is different. The nature of the first is as a payment from defendant as insurer to the plaintiff as the insured. The nature of the second is as a payment from defendant as tortfeasor to the plaintiff as the party injured by the defendant's negligence. It is axiomatic that the plaintiff is entitled to receive the benefits of the bargain under the insurance contract, irrespective of the fact that the carrier servicing the contract may also be the tortfeasor. In addition to the Fourth Circuit's holding in *Price*, this holding receives support from other courts who have considered application of the collateral source rule where the insurer is also the tortfeasor. 808 F.Supp. at 1257–1258.

In the case at bar the United States' payment of CHAMPUS benefits was akin to the payment from the insurer to its insured. Lt. Murphy's active duty service certainly constitutes consideration of value equal to the payroll deduction through which Karsten made her payments. As is pointed out in *Price*, and subsequently reaffirmed in *Karsten*, it is the nature of the two payments that should control the determination of whether they are collateral, not the source of such payments. This Court accordingly relies upon the following analysis from *Karsten:*

> When viewed in this manner, it is obvious that the collateral source rule, and the principle behind that rule, applies here. The plaintiff is not receiving a windfall at the defendant's expense. On the one hand, she is receiving the benefit of her bargain with the defendant as insurer, and on the other she is receiving compensation for her injuries. Likewise, the defendant is not being twice penalized for the wrong it committed; as tortfeasor the defendant is being asked to compensate the plaintiff only once. To set off payments owed by the defendant as tortfeasor allows the defendant to reap a windfall by allowing it to avoid its contractual obligations to the plaintiff.

808 F.Supp. at 1258.

The Government bases its argument primarily upon the decision of the United States District Court for the Eastern District of Virginia in *Diaz*, which adopted the reasoning set forth in *Mays v. United States*, 806 F.2d 976 (10th Cir.1986). In holding that CHAMPUS payments were not a collateral source, the *Mays* Court emphasized that the eligibility of Mrs. Mays for CHAMPUS was based primarily upon her status as the spouse of a retired Air Force Officer rather than any monetary investment made by her spouse:

> Everett Mays argues that his contribution to the CHAMPUS program consists of his twenty-one years of service in the Air Force. Rebel Ann Mays would not have been eligible for CHAMPUS benefits if her husband had not served at least twenty years in the armed services. 32 C.F.R. § 199.9(b) (1985); 10 U.S.C. § 1331(a)(2). This service, however, is not the type of contribution required by the collateral source rule. Rebel Ann Mays received CHAMPUS benefits because of her husband's *status*, not because of a monetary investment. A showing that one's status makes one eligible for government benefits is not showing that one has "contributed to a special fund" from which benefits are now being received.

806 F.2d at 977.

This Court disagrees with the analysis in *Mays* and FINDS it inconsistent with *Price* and *Karsten*. In the view of this Court, Everett Mays' twenty-one years of service in the armed forces is not to be viewed as a lesser consideration for medical benefits than the payroll deduction taken from a civilian employee.

This Court also FINDS the Government's position to be inconsistent with the recognized liens granted by statute under the Longshoremen's and Harborworkers' Compensation Act, 33 U.S.C. § 901 *et seq.*, as well as the Virginia Worker's Compensation Act, Va.Code § 65.2–100 *et seq.* Liens obtained pursuant to both of these Acts survive the particular date when judgment is entered for the injured party. For example, under either Act, future medical payments are taken into consideration when computing the value of the lien. *See, e.g.,* 33 U.S.C.

§ 933(e)(1)(D).[3]  In the case at bar, the United States has not asserted that it is entitled to an off-set for future CHAMPUS benefits paid in behalf of Diane Murphy.[4]  Accordingly, the off-set claimed by the United States is subject to the vagary that this amount would be guided by whatever portion of CHAMPUS benefits had been paid at the time of the trial of the tort case.  If the United States is entitled to a lien or off-set, however, it follows that this lien would be based upon the total amount of CHAMPUS benefits to be paid in behalf of the Plaintiff by reason of the injuries suffered in the accident, and not the amount the United States happened to have paid as of the date when its off-set was asserted.[5]

For the reasons set forth above, this Court FINDS that there is no basis in law to grant the United States a lien or off-set which would enable it to reduce the amount of the tort judgment awarded to the Plaintiff in this proceeding.  The Court further FINDS that the greater weight of the authority in this circuit supports the Plaintiff's position that the partial payment of the CHAMPUS benefits by the United States in behalf of the Plaintiff must be considered a collateral source.

### III.  Summary and Conclusion

In determining whether or not the Government's payment of CHAMPUS benefits in behalf of the Plaintiff entitles it to an off-set or whether it should be classified as a collateral source, this Court must follow Virginia law as enunciated by the Virginia Supreme Court of Appeals and as interpreted by the Courts of the United States, particularly the United States Court of Appeals for the Fourth Circuit and the United States District Courts in Virginia.  Upon analyzing these cases, the Court concludes that the service of the Plaintiff's spouse on active duty in the United States Navy constitutes a valuable consideration for the CHAMPUS benefits paid in behalf of Diane Murphy.  Inasmuch as a valuable consideration has been, and will continue to be, paid for the CHAMPUS benefits, this Court views the payment of the sum of $28,578.34 to be in the nature of a payment by an insurer to its insured.  Since the Court FINDS the nature of the benefit to be paramount, it must view the payment of the CHAMPUS benefits by the United States as collateral to the payment by the United States to the Plaintiff in its capacity as a tortfeasor.

Accordingly, it is ORDERED that the United States' Motion for Off–Set is DENIED.

It is so ORDERED.

---

3.  33 U.S.C. § 933(e) states:

   (e) Recoveries by assignee.  Any amount recovered by such employer on amount of such assignment, whether or not as the result of a compromise, shall be distributed as follows:
   (1) The employer shall retain an amount equal to—
   (A) the expenses incurred by him in respect to such proceedings or compromise (including a reasonable attorney's fee as determined by the deputy commissioner of the Board);
   (B) the cost of all benefits actually furnished by him to the employee under section 7 [33 U.S.C.S. § 907];
   (C) all amounts paid as compensation;
   (D) the present value of all amounts thereafter payable as compensation, such present value to be computed in accordance with a schedule prepared by the Secretary, and the present value of the cost of all benefits thereafter to be furnished under section 7 [33 U.S.C.S. § 907]. . . .

   (2) The employer shall pay any excess to the person entitled to compensation or to the representative, less one-fifth of such excess which shall belong to the employer.

4.  The United States had previously indicated it was claiming an off-set in excess of the $28,578.34 that it had previously paid in behalf of the Plaintiff on the theory that additional claims had been made under CHAMPUS and at such time as it honored these claims it would assert an off-set.  It abandoned this position at the court hearing of November 15, 1993 as such a position would have been inconsistent with the testimony of its witness, Judy F. Carroll.

5.  If a third-party tortfeasor had been found liable to the Plaintiff rather than the United States, the United States would have been entitled to a statutory right of subrogation under 42 U.S.C. § 2651(a).  If Congress had intended to create a similar right in such cases, it could have so stated instead of specifically exempting cases in which the United States is the tortfeasor.