Frances T. KARSTEN, Plaintiff–Appellee,

v.

**KAISER FOUNDATION HEALTH PLAN OF the MID–ATLANTIC STATES, INC., Defendant–Appellant.**

No. 93–1104.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 9, 1994.

Decided Sept. 20, 1994.

---

**ARGUED:** Anthony John Trenga, Hazel & Thomas, P.C., Richmond, VA, for appellant. Steven Mark Garver, Reston, VA, for appellee. **ON BRIEF:** H. Lane Kneedler, Attison L. Barnes, III, Vernon E. Inge, Jr., Hazel & Thomas, P.C., Richmond, VA, for appellant.

Before ERVIN, Chief Judge, and RUSSELL and HALL, Circuit Judges.

Affirmed by published PER CURIAM opinion.

## OPINION

PER CURIAM:

Frances Karsten (Karsten) brought this diversity action for medical malpractice against Kaiser Foundation Health Plan of the Mid–Atlantic States, Inc. (Kaiser) in the United States District Court for the Eastern District of Virginia. Jurisdiction was proper under 28 U.S.C. § 1332. The jury found in favor of Karsten and awarded her damages in the amount of $210,000. The district court denied Kaiser's post-trial motions and Kaiser appealed. For the reasons set forth below, we affirm the judgment of the district court.

### I.

Kaiser is a health maintenance organization (HMO) with which Karsten contracted in 1988. Under the relevant provisions of Virginia law, in exchange for membership fees, an HMO's members receive health care services directly from Kaiser-employed physicians at Kaiser's own facilities. When treatment is required that the HMO is not equipped to provide through its own facilities, the member is directed to a non-HMO entity with which the HMO has contracted to provide care to its members. Under Virginia law, the member incurs no monetary liability to the non-HMO provider of services. See Va.Code Ann. § 38.2–4311(B) (Michie Supp. 1993) (stating that the contract between such a facility and the HMO must include a provision that "the subscriber or enrollee shall not be liable to the provider for any sums owed by the health maintenance organization").

In August 1989, Karsten went to a Kaiser facility and consulted Dr. Proctor, a fertility specialist, concerning the difficulties she had encountered in becoming pregnant. She was given a pap smear test, the results of which were abnormal. She returned in September 1989 for a second examination. The pap smear results from this visit were normal; however, a cervical biopsy was also performed, and the results of that exam were abnormal.

After a third visit, in October, Karsten was scheduled to undergo a cervical conization in late December. This was postponed until January 9, 1990, when it was performed by Dr. Proctor at Fairfax Hospital, a non-Kaiser facility with which Kaiser had contracted. A cervical conization should not be performed upon a pregnant woman. Prior to the procedure, however, although Karsten stated that

she was not aware that she was pregnant, a pregnancy test was not performed.

Following the procedure, Karsten suffered intermittent vaginal bleeding over several weeks, and went to Kaiser's facilities on February 8, when it was determined that she was pregnant and that she had been pregnant at the time of the cervical conization procedure. As the fetus grew, it strained Karsten's cervix, which had been weakened by the biopsy procedure in January. On February 25, 1990, she went to Fairfax Hospital where a cerclage procedure was performed, suturing closed her cervix. Despite these efforts, on April 2, 1990 Karsten miscarried, and the baby was delivered stillborn at Fairfax Hospital. Although Karsten received informational bills from Fairfax Hospital stating the charges incurred for these services, all costs for Karsten's treatment at Fairfax Hospital were paid by Kaiser.

Karsten subsequently brought suit against Kaiser in the Eastern District of Virginia. Each side engaged in discovery. Kaiser asked Karsten for an identification of all expert witnesses "whom you intend to call to testify at the trial of this case." In the initial response, Karsten indicated that experts had not yet been selected. In supplemental responses Karsten identified two experts, Drs. Sherman and Powell; she never identified Dr. Ballo.

Prior to trial the district court issued a scheduling order, the two central paragraphs of which are crucial to this appeal. They state:

> Counsel should bring to the pretrial conference a list of the witnesses proposed to be called, a list of exhibits, and the exhibits themselves, pre-marked and ready for filing. *No witness or exhibits not so listed and filed will be permitted at trial except for impeachment or rebuttal purposes.* Objections to exhibits must be noted (they will be ruled on at trial) at the conference; otherwise the exhibits shall stand admitted in evidence. In addition, counsel should meet prior to the conference, exchange the aforementioned lists and copies of the exhibits, and prepare and bring to the conference a written stipulation of all uncontested facts.

> No witness, *expert or otherwise,* will be permitted to testify who, in response to a request for his identity, has not been identified in time to allow his deposition to be taken or the substance of his knowledge ascertained, or, in the case of an expert, to allow the facts relied upon and opinions held by him to be obtained by F.R.Civ.P. 26(b)(4)(A) or deposition prior to the discovery cutoff.

J.A. 18 (emphasis in original).

In complying with the order, Karsten submitted a list of exhibits for trial. Included in the exhibits were the medical bills Karsten received from Fairfax Hospital. Kaiser did not timely object to the inclusion of the medical bills, as its counsel later admitted. At the time of trial, however, Kaiser did object to their admission. Karsten responded on two grounds. First, procedurally, she contended that Kaiser was barred under the scheduling order from objecting based on the failure to object when required. Second, on the merits, she contended that the admission of these documents was proper under Virginia's version of the "collateral source rule." After hearing argument from both sides, the judge ruled first, that Kaiser's failure to object to the introduction of these exhibits as required under the scheduling order procedurally barred it from objecting. Second, he addressed the question on the merits, and ruled that, under Virginia law, the bills would be admitted under the collateral source rule. The district judge stated at one point that he saw this issue come up occasionally, and that it would be useful to publish an opinion on the question. He subsequently did so. *Karsten v. Kaiser Foundation Health Plan of the Mid–Atlantic States, Inc.,* 808 F.Supp. 1253 (E.D.Va.1992). However, in his published opinion, he dealt at length with the question on the merits, while leaving to a footnote, as an alternative holding, the point that the objection was procedurally barred.*

---

* And we put his footnote in a footnote as well. The full alternate holding stated as follows:

> As an alternative finding, this Court holds that Defendant's objection to the medical bills is barred because of failure to comply with the

At the opening of trial, Karsten sought a motion in limine to suppress any evidence regarding her alleged excessive smoking and drinking during the pregnancy as a cause of the miscarriage. Kaiser indicated to the judge that its experts would testify on this matter. This motion was denied. Following the close of Kaiser's case, in which it did offer evidence on this point, Karsten called Dr. Joseph Ballo as a rebuttal witness. Kaiser objected on the basis that Dr. Ballo had not been identified as an expert witness, and that it had not had the opportunity to depose him or learn the basis of his testimony. The district court permitted him to testify, pointing out the language in the scheduling order, "No witnesses or exhibits not so listed and filed will be permitted at trial except for impeachment or rebuttal purposes." (Emphasis omitted.) Dr. Ballo then testified on the basis of Karsten's medical records that smoking or drinking could not have been the cause of the miscarriage. Kaiser put on a surrebuttal witness to counter Dr. Ballo's testimony.

The appeal before this court centers on the district court's holding concerning the application of Virginia's collateral source rule in the area of HMO's, and the propriety of the admission of Dr. Ballo's testimony.

## II.

Rulings in the alternative are a tricky subject. On the one hand, they have great appeal, for they allow a judge to give multiple reasons to support his or her holding and thus, in some circumstances, allow a reviewing court the opportunity to address each of the issues at once, without the cost in time and effort that would arise from each justification for a particular result being handled by seriatim appeal. Thus, from the perspective of judicial economy, alternative holdings are a welcome blessing for courts at all levels.

But alternative holdings also provide courts, particularly appellate courts reviewing alternative holdings below, with the tempting opportunity to stray into the practice of advisory opinion-making, solving questions that do not actually require answering in order to resolve the matters before them. If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest *dicta*. This danger is particularly apparent where the alternative holdings are a pair, one substantive and the other procedural. In such circumstances, a reviewing court that affirms on the procedural ground faces a dilemma as to the substantive ground. To address the question on the merits is to ignore the procedural reason for the affirmance; to ignore the question on the merits allows the lower court's treatment of that issue to stand, when the appellate court's affirmance makes that part of the lower court's holding *dicta*. Where there is a procedural default, it is entirely understandable for a court to want to explain to the losing party that, even had it not defaulted, it would have lost anyway. *See Harris v. Reed*, 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 1044 n. 10, 103 L.Ed.2d 308 (1989). Nevertheless, while that explanation may comfort the party, it creates new law in a strictly advisory fashion.

In the present case, Kaiser's clear procedural default prevents us from addressing the matter of the applicability of Virginia's collateral source rule to HMO payments to outside contractors for, whatever our views on this interesting and important matter of law, the procedural default stands as an independent ground for affirming the admission of this evidence. Any treatment of the matter on its merits would be nothing more than pure *dicta*, unnecessary for the determination of this case, and it is a path we decline to tread. While Kaiser appeals to us earnestly to reach the merits, arguing that a refusal to do so would "exalt form over sub-

---

Scheduling Order. The Scheduling Order, which both counsel received, clearly states that "[o]bjections to exhibits must be noted ... at the [pretrial] conference; otherwise the exhibits shall stand admitted into evidence." The pretrial conference in this matter was held on August 20, 1992, and was attended by counsel for both sides. Counsel for the defense admits

that he failed to raise any objections to the exhibits now at issue. Even if the Court were inclined to agree with counsel on the substantive issue, the exhibits would alternatively be admitted because the objections are untimely. *Karsten v. Kaiser Foundation Health Plan of the Mid–Atlantic States, Inc.*, 808 F.Supp. 1253, 1254 n. 2 (E.D.Va.1992).

stance," we can only reply that we are constitutionally limited to deciding only cases or controversies properly presented, and that this prohibits us from dispensing the type of free advice Kaiser seeks to receive.

We thus affirm the admission of this evidence on the ground that Kaiser failed to object in a timely manner, as is noted in footnote 2 of the district court's opinion. As to the question of the applicability of the collateral source rule to HMO's, resolution of this issue of Virginia law must await another day.

### III.

The control of the admission of evidence at trial is an issue firmly within the control of the district court, and we review its determinations only to be certain the court has not abused its discretion. Our review of the matter of the admissibility of the testimony of Dr. Ballo as a rebuttal witness, allowed by the district court as consistent with the pretrial scheduling order, convinces us that the district court did not abuse its discretion in this instance, and we therefore affirm.

### IV.

For the reasons stated above, we affirm the judgment of the district court.

*AFFIRMED.*